Sumner LESTER, Sonny Lester Productions, Inc., Groove Merchant International, Inc., Groove Concert International, Inc., and Vision Productions, Inc., Plaintiffs,

v.

PICKWICK INTERNATIONAL, INC., Defendants.

No. 79 CV 3124.

United States District Court, E. D. New York.

Dec. 23, 1981.

Greenspan & Jaffe by Leon J. Greenspan, White Plains, N.Y., for plaintiffs.

Rosenman, Colin Freund Lewis & Cohen by Robert W. Gottlieb, Eric M. Rosenberg, Robert J. Schechter, New York City, for defendant.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiffs in this diversity action seek rescission, restitution and damages stemming from alleged fraudulent misrepresentations relating to an agreement entered into in 1977 by plaintiff Sumner Lester, a producer of jazz records, as sole shareholder, officer and director of plaintiff Groove Merchant International, Inc. (hereinafter "Lester") with defendant Pickwick International, Inc. ("Pickwick"). Pursuant to the 1977 agreement, Pickwick had paid the sum of $300,-000 to Lester, the parties terminated a 1974 license agreement under which Pickwick had been paying Lester substantial royalties, and Pickwick purchased the master recordings (except for four) which had previously been delivered under the license agreement. Defendant received the exclusive right to manufacture and sell records derived from the masters and dispose of all existing inventory. In addition, Lester expressly released Pickwick from any claims arising out of the subject matter of the license agreement or "the manufacture, sale or distribution of records thereunder."

Defendant has moved for summary judgment pursuant to F.R.Civ.P. 56(a), admitting for the purposes of this motion that representatives of Pickwick made misrepresentations during negotiations for the purchase agreement. But defendant argues that no genuine issues of material fact exist with regard to Lester's deception or justifiable reliance, and the materiality of the misrepresentations.

Since the complaint appears to be predicated on breaches of the 1974 license agreement and the manufacture and sale of records from master recordings delivered thereunder, the release in the 1977 agreement would, if effective, proscribe the present action. Yet plaintiffs allege that Lester was fraudulently induced to enter into the latter agreement, claiming that he relied on misrepresentations concerning the manufacture and sale of "cutout" records derived from the Groove Merchant master recordings.[1] Specifically, plaintiffs claim that Lester relied on denials that any such records had been or would be manufactured or sold by Pickwick, and that in fact hundreds of thousands of cutouts had been manufactured prior to the 1977 agreement and were sold subsequent thereto. Defendant argues that a finder of fact could come to no reasonable conclusion other than that the misrepresentation was not material, that Lester was not deceived, and that his reliance, if any, was not justified.

■■ The law is clear that a contract may be voidable when the agreement is induced by "a promise ... made with a preconceived and undisclosed intention of not performing it .... " *Sabo v. Delman*, 3 N.Y.2d 155, 160, 143 N.E.2d 906, 908, 164 N.Y.S.2d 714, 716 (1957). Such a promise constitutes "a misrepresentation of 'a material existing fact,'" *id.*; so that, to sustain a claim for rescission, a plaintiff need only prove the additional elements of justifiable reliance and injury. *Cudemo v. Al & Lou Construction Co.*, 54 A.D.2d 995, 387 N.Y. S.2d 929 (3rd Dept. 1976).

---

1. According to the complaint:

"15. Upon information and belief, a 'cutout' record is a record in which a hole is punched in the jacket, or a corner cut through the record other than the hole which is used to affix the record to the turntable. The purpose of so mutilating the record is to distinguish it from full line merchandise.

"16. 'Cutout' records are sold at a fraction of the price of 'full line' records, and only to eliminate excess inventory when the original recording can no longer be sold as 'full line' recordings, or even as discount recordings because of a lack of demand for the record."

■ However, the law is equally clear that plaintiffs must establish by "clear and convincing" evidence the requisite elements of fraud, and that the inference of fraud must be "unequivocal." *Manchel v. Kasdan,* 286 App.Div. 483, 484, 144 N.Y.S.2d 694, 695 (1st Dept. 1955), *aff'd,* 1 N.Y.2d 734, 134 N.E.2d 687, 151 N.Y.S.2d 940 (1956). Because the pretrial depositions and affidavits submitted on the instant motion show that plaintiffs cannot possibly present clear and convincing evidence of the requisite element of justifiable reliance, summary judgment for defendant is appropriate.

Documentary evidence and Lester's pretrial testimony show that Lester could not have justifiably relied on the representations, assumed *arguendo* to be false, *viz.,* that no cutouts had been or would be produced by defendant. For example, on January 20, 1977, over two months prior to the closing of the purchase agreement containing the release clause, plaintiffs' attorney wrote to defendant, "I have been advised by my client that you are in the process of manufacturing 250,000 'cut-out' albums." Defendant's Exh. G. Additionally, plaintiffs' attorney stated in a letter dated February 2, 1977:

"[Lester] has also forwarded to me the deleted item availability list of January 7, 1977 which clearly indicates that you have manufactured product in violation of his production contract." *Id.*

Moreover, Lester testified that he had discovered prior to the closing of the purchase agreement that Pickwick had been selling cutouts of albums he had produced. Lester Dep. at 264. He further testified that "[a]ll during the negotiations for the closing of our April 1977 agreement" he tried to "obtain . . . money from Pickwick" for selling these cutouts in violation of what he "believed [his] contractual rights were." *Id.* Finally, Lester's testimony shows that he could not have reasonably relied on the misrepresentative assertions by David O'Connell, the administrative vice-president of Pickwick responsible for negotiating the purchase agreement, be-

cause Lester testified that he was "suspicious" of and did not "trust" O'Connell, and that O'Connell was "totally unreliable." Lester Dep. at 150–51, 886.

Attempting to raise material fact issues, plaintiffs have submitted affidavits by Lester and his attorney, stating that their distrust of Pickwick dissolved in the face of repeated assurances by Pickwick's representatives that no cutouts had been manufactured. The affidavits, then, examined in isolation, would appear to raise a factual issue as to whether the circumstances reasonably supported Lester's expectation that the assurances were made in good faith. Yet, the critical question for the instant motion is whether the sworn statements submitted solely for the purpose of opposing summary judgment raise *genuine* issues of fact when examined in light of the former unequivocal testimonial and documentary evidence.

In this regard, the Second Circuit has cautioned against inflating the significance of affidavits which conflict with previous deposition testimony:

"If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Perma Research & Dev. Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir. 1969).

In the context of a fraud claim such as the instant one, the *Perma Research* admonition is particularly apposite. Not only have plaintiffs failed to present evidence from which fraudulent conduct could be inferred, the prior admissions unequivocally show precisely the opposite: any reliance upon defendant's misrepresentation was wholly unjustifiable. Additionally, plaintiffs present no supporting facts which indicate that the prior admissions should be discredited. Rather, they rely on the naked assertion that Lester's beliefs changed as the negotiations approached consummation.

■■ In the absence of supporting facts and "concrete particulars," *Dressler v. MV*

*Sandpiper*, 331 F.2d 130, 133 (2d Cir. 1964), which show that a genuine issue exists as to Lester's belief in the validity of defendant's representations, and the reasonableness of Lester's reliance, plaintiffs' prior admissions defeat the possibility of establishing their fraud claim by clear and convincing evidence. Thus, the affidavits raise merely "sham issues which should not subject the defendants to the burden of a trial." *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir. 1975). Since such sham issues cannot constitute a basis for rescission of the purchase agreement, the release contained in that agreement bars plaintiffs' claims arising out of "the manufacture, distribution and sale of records." Accordingly, defendant's motion for summary judgment is granted.

SO ORDERED.