780 P.2d 416

**Jack J. WRIGHT, a single man, Plaintiff/Appellant,**

**O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Appellant,**

v.

**Allen Wayne HILLS and Carole Elaine Hills, husband and wife; Alma School Land Fill, Inc., an Arizona corporation; Andrew S. Jackson; and Joseph Urban and Joan C. Urban, husband and wife, Defendants/Appellees.**

No. 2 CA–CV 88–0342.

Court of Appeals of Arizona, Division 2, Department A.

March 9, 1989.

Review Denied Oct. 11, 1989.*

---

* The Honorable Levi Ray Haire, retired, was authorized to participate in this appeal by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. 6, § 20, and A.R.S. § 38–813.

* Corcoran, J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears, P.A. by Larry L. Smith, M.E. Rake, Jr. and Ted A. Schmidt, Phoenix, for appellants.

Mariscal, Weeks, McIntyre & Friedlan-der, P.A. by Leslie A. Kresin, Phoenix, for defendants/appellees Hills.

Sacks, Tierney, Kasen & Kerrick, P.A. by Robert J. DuComb, Jr. and David L. Keily, Phoenix, for defendants/appellees Alma School Land Fill, Inc., Urban and Jackson.

## OPINION

HOWARD, Judge.

This is an appeal from the granting of a summary judgment. The main issue in this case is whether a party can avoid summary judgment by filing an affidavit which contradicts his previous depositional testimony. A secondary issue is whether the trial court erred in imposing sanctions under Rule 11(a), Rules of Civil Procedure, 16 A.R.S., against the appellant and his attorneys.

## FACTS

Jack Wright filed a complaint against the defendants which alleged that one John C. Trevizo asked him to find investors to forestall a pending foreclosure on a parcel of land located in Mesa, Arizona. If he was successful in finding appropriate investors, Trevizo promised to pay Wright by conveying to him an undivided one-fourth interest in the backfilling rights of the property. Wright introduced Trevizo to the defendant A. Wayne Hills, and negotiations culminated in a meeting between Wright, Trevizo and Hills where it was agreed that the Hills would provide sufficient funds to stop the foreclosure and in return Trevizo and Hills would share equally in all ownership rights of the property including, but not limited to rock and gravel, mining rights and backfilling rights. Furthermore, Trevizo and Hills were to jointly and severally see to it that Wright got paid for his efforts in bringing the parties together.

The complaint further stated that: "In recognition of this agreement and as a result of said agreement ..." the property was conveyed to a corporation owned by Trevizo and another, and to the Hills, but that they thereafter refused to pay Wright his share of the gross profits from the backfilling operations as they had promised.

The complaint also alleges that the property had been subsequently fraudulently conveyed to the defendants Alma School Land Fill, Inc. (Alma School) and the Urbans. The defendants Jackson were alleged to be owners, shareholders, agents or employees of the defendant Alma School.

After filing their answers and after discovery was undertaken, defendants filed motions for judgment on the pleadings which were subsequently treated by the court as a motion for summary judgment in view of matters outside the pleadings which were filed by the parties. The motion for summary motion contended that Wright was acting as a real estate broker in the Trevizo–Hills deal and that he could not maintain the suit because he was not a qualified licensed broker or salesman. See A.R.S. § 32–2152. The motion filed by the defendants Alma School, the Jacksons and the Urbans also contended that Wright admitted in his deposition to certain facts which showed, as a matter of law, that there was no fraudulent transfer of the land.

In opposition Wright filed an affidavit which stated that Trevizo never told him that any transfer of the property was to take place, that all the investor would get would be the full proceeds to the rock and gravel operations until the investor got his money back and that the investor and Trevizo would thereafter share equally in all gravel profits and in 50 percent of any future landfill or backfill operations. According to the affidavit, Wright then located Hills and the three had a meeting where it was agreed that Hills and Trevizo would each get 37 and one-half percent in the backfilling operation and he would get 25

percent. No discussion of transferring title in connection with the investment had ever taken place as of the end of the meeting. It was not until three or four days later that Trevizo told him that Hills had forced him to renegotiate and transfer one-half of the property to Hills as part of the transaction.

In response to this affidavit the defendants pointed out to the court Wright's deposition testimony. The plaintiff testified in his deposition that, pursuant to his agreement with Trevizo for procuring investors, he was to receive:

A. ... 25 percent of the total. Later I told Johnny that was entirely too much.
Q. Of the total received by Trevizo, is that what you mean?
A. Of everything, all the property, *the sale of the property,* everything, 25 percent originally.
Q. So 25 percent of any purchase price received on the property?
A. *Yes. He was desperate. He had to sell it.*

\* \* \* \* \* \*

Q. Can you describe for me what the compensation you were to receive out of the Ron Perkins' deal was? If it was different or if it was the same, you can just tell me.[1]
A. At that time 25 percent of everything.
Q. When you say, "everything," just to keep the record clear, we're still talking about net proceeds?
A. *We're talking about the sale of the property.* We're talking about the digging of the property. We're talking about the backfill of the property. We're talking about everything that happened on the property then and later. I was to receive 25 percent at that time.
(Emphasis added).

Wright also said in his deposition that during the negotiations with Hills, the parties had three meetings. The first was at Hills' office attended by Wright and Wayne Hills. The second meeting was two to three weeks later at Hills' home attended by Wayne Hills, Trevizo, and Wright. The third meeting took place in March at a restaurant, attended by Wright, Trevizo, Hills and part of the time by his son. Wright testified that the deal was discussed at this meeting and an agreement was reached. When asked if at the time of this meeting plaintiff knew whether Trevizo was to retain 100 percent ownership of the property, he testified, "It wasn't my understanding that he was to maintain it 100 percent." He later testified that "All the time he [Wayne Hills] was to have 100 percent until he got his money back" and "he was to give Johnny Trevizo 50 percent of the land back after ... Wayne got all of that money back out of the business...." When asked if there was more than one proposed deal between Trevizo and Hills, Wright testified that he had no idea.

Wright was given an opportunity to correct his deposition. He made some corrections but did not make any corrections of his foregoing testimony. There is no doubt that his affidavit contradicts his depositional testimony which shows, contrary to the assertion made in his affidavit, that he knew all along that a transfer of real property was to take place.

After Wright's deposition was taken, the attorneys for the defendants sent letters to plaintiff's attorney asking that the complaint be dismissed, setting forth the reasons why the plaintiff had no claim and promising not to seek reimbursement for attorney's fees if the complaint was dismissed by a certain date. The Hills pointed out that Wright's deposition showed he was acting as a broker and could not recover since he was not licensed. The other defendants, whose liability rested on the alleged fraudulent transfer, stated in their letter that Wright's own testimony in the deposition showed that there was no fraudulent transfer of the land. Plaintiff's counsel refused to heed the admonitions of the defendants and insisted that further depositions would have to be taken before he could consider dismissal of the lawsuit.

1. Trevizo approached a man named Perkins prior to approaching Hills.

The trial court granted the defendants' summary judgment and awarded the defendants Jackson, Urban and Alma School attorney's fees in the sum of $3,860.70 and defendants Hills attorney's fees in the sum of $5,792.00, pursuant to Rule 11, finding that after the plaintiff's deposition, it should have been clear that plaintiff's claim was not well grounded and was not warranted by existing law.

Appellants contend that the trial court erred in failing to consider Wright's affidavit in opposition to the motion for summary judgment, that summary judgment should not have been granted because the record shows that he did not act as a real estate broker, and that the trial court erred in imposing sanctions under Rule 11. We do not agree and affirm.

## THE SUMMARY JUDGMENT

### I. Standard Of Review.

■ The court of appeals' role, in reviewing the granting of summary judgment, is to determine whether there is any initial material fact underlying the adjudication, and if not, whether substantive law was correctly applied. *Long v. Buckley*, 129 Ariz. 141, 629 P.2d 557 (App.1981). On reviewing a judgment granting a motion for summary judgment, the court of appeals must view the evidence in the light most favorable to the party who opposed the motion, and must affirm if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. *World Investments, Inc. v. Harber's Estate*, 17 Ariz. App. 107, 495 P.2d 877 (1972). We shall ignore those portions of Wright's deposition which he refers to in his opening brief and which were not brought to the attention of the trial court. We shall also ignore appellant's request to read the entire deposition of Wright. This request was first made to the trial court after it granted summary judgment, in appellants' reply to the appellee's response to appellants' motion for reconsideration and was properly rejected by the trial court. See *Phil W. Morris Company v. Schwartz*, 138 Ariz. 90, 673 P.2d 28 (1983).

### II. The Contradictory Affidavit

■ A party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment. *Mack v. United States*, 814 F.2d 120 (2nd Cir.1987); *Military Services, Realty, Inc. v. Realty Consultants of Va.*, 823 F.2d 829 (4th Cir.1987); *Miller v. International Telephone and Telegraph Corporation*, 755 F.2d 20 (2nd Cir.1985); *Miller v. A.H. Robins Company, Inc.*, 766 F.2d 1102 (7th Cir.1985); *Van T. Junkins & Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656 (11th Cir.1984); *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361 (8th Cir.1983); *Reisner v. General Motors Corporation*, 671 F.2d 91 (2d Cir. 1982); *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540 (9th Cir.1975); *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572 (2nd Cir.1969); *McLaughlin v. Cohen*, 686 F.Supp. 454 (S.D.N.Y.1988); *Howard v. Malcolm*, 658 F.Supp. 423 (E.D.N.C.1987); *O'Connell v. Norwegian Caribbean Lines, Inc.*, 639 F.Supp. 846 (N.D.Ill.1986); *Martin v. City of New York*, 627 F.Supp. 892 (E.D.N.Y. 1985) (rule applied to a non-party witness); *United States v. Dercacz*, 530 F.Supp. 1348 (E.D.N.Y.1982); *Lester v. Pickwick International, Inc.*, 528 F.Supp. 1011 (E.D.N.Y. 1981). Allowing a party to submit a contradictory affidavit after giving a deposition would greatly diminish the utility of summary judgment as a procedure for screening out genuine issues of fact. *Perma Research & Development Co. v. Singer Co.*, supra. An inconsistent affidavit may preclude summary judgment, however, if the affiant was confused at deposition and the affidavit explains those aspects of the deposition testimony or if the affiant lacked access to material facts and the affidavit sets forth the newly discovered evidence. *Miller v. A.H. Robins Co., Inc.*, supra. State cases which follow the federal rule are *Mays v. Ciba–Geigy Corp.*, 233 Kan. 38, 661 P.2d 348 (1983); *Rollins v. Junior Miller Roofing Co.*, 55 N.C.App. 158, 284 S.E.2d 697 (1981); *Clapp v. Oregonian Publishing Co.*, 83 Or.App. 575, 732

P.2d 928 (1987); *The Moving Co. v. Whitten,* 717 S.W.2d 117 (Tex.Ct.App.1986); *Guardian State Bank v. Humpherys,* 762 P.2d 1084 (Utah 1988); *Webster v. Sill,* 675 P.2d 1170 (Utah 1983).

[3] Arizona courts will give great weight to the federal interpretations of rules of civil procedure. *Edwards v. Young,* 107 Ariz. 283, 486 P.2d 181 (1971). We adopt the law set forth in the federal cases and hold that parties cannot thwart the purposes of Rule 56 by creating issues of fact through affidavits that contradict their own depositions. An inconsistent affidavit may preclude summary judgment, however, if the affiant was confused at the deposition and the affidavit explains those aspects of the deposition testimony or if the affiant lacked access to material facts and the affidavit sets forth newly discovered evidence. Wright's affidavit does not assert that he was confused at the time his deposition was taken. In fact, he later was given an opportunity to and did make corrections to his deposition, however he did not make any corrections to the deposition involving the issues here. The matters at issue here were peculiarly within his knowledge. There is no doubt that his affidavit contradicts his deposition testimony which clearly states that at the outset a sale of the property was contemplated and that he knew there was going to be such sale. The trial court was correct in disregarding Wright's affidavits.

### III. The Licensing Requirements

■ A.R.S. § 32–2101(25) defines a "real estate broker" as a person who, for another and for compensation:

\* \* \* \* \* \*

(c) Negotiates or offers, attempts or agrees to negotiate the sale, exchange, purchase, rental or leasing of real estate.

\* \* \* \* \* \*

(i) Assists or directs in the procuring of prospects, calculated to result in the sale, exchange, leasing or rental of real estate.

(j) Assists or directs in the negotiation of any transaction calculated or intended to result in the sale, exchange, leasing or rental of real estate.

(k) Negotiates or offers, attempts or agrees to negotiate a loan secured or to be secured by a mortgage or other encumbrance upon or transfer of real estate. . . .

\* \* \* \* \* \*

(n) Performs any of the foregoing acts as an employee of, or in behalf of, the owner of real estate, or interest therein, or improvements affixed thereon, for compensation.

A.R.S. § 32–2122 makes it illegal to perform such services without a license and provides:

C. Any act, in consideration or expectation of compensation, which is included in the definition of a real estate broker ... whether the act is an incidental part of a transaction or the entire transaction, constitutes the person offering or attempting to perform the act of a real estate broker ... within the meaning of this chapter.

In order to state a viable claim and recover compensation for services such as those outlined above, the plaintiff must comply with A.R.S. § 32–2152, which provides:

An action for the collection of compensation earned may be maintained in the court of the state by any broker or salesman. To commence the action the complaint shall allege that the plaintiff was a qualified licensed broker or salesman at the time the claim arose. . . .

The record clearly shows that Wright was acting as a real estate broker within the meaning of the Arizona statutes and was not licensed. The trial court did not err in granting summary judgment in the defendants' favor.

### THE RULE 11 SANCTIONS

#### I. Standard of Review

■ Since our Rule 11 was, and still is, essentially identical to the federal rule, we turn to federal case law as to the standard of review by an appellate court of orders imposing sanctions under Rule 11. Such standards are set forth in *Zaldivar v. City*

*of Los Angeles,* 780 F.2d 823, 828 (9th Cir.1986):

> Appellate review of orders imposing sanctions under Rule 11 may require a number of separate inquiries. If the facts relied upon by the district court to establish a violation of the Rule are disputed on appeal, we review the factual determination of the district court under a clearly erroneous standard. If the legal conclusions of the district court that the facts constitute a violation of the Rule is disputed, we review the legal conclusion *de novo.* Finally, if the appropriateness of the sanction imposed is challenged, we review the sanction under an abuse of discretion standard.

### II. Did The Court Err In Granting Sanctions?

At the time the complaint was filed in this case and at all relevant times Rule 11(a), provided in pertinent part:

> The signature [on the pleading] of an attorney or party constitutes a certificate by him ... that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in cost of litigation.... If a pleading, motion or other paper is signed in violation of this rule, the court, ... shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.[2]

Plaintiff's attorneys contended it was error for the trial court to sanction them for engaging in continuing representation of their client under the circumstances be-

cause (1) the summary judgment should not have been granted in favor of defendants in the first instance; (2) the award of sanctions is inconsistent with the determination that the complaint was filed after reasonable investigation, and (3) the attorneys did not unduly delay or otherwise act improperly by seeking to prevent the entry of judgment against their client, Wright. We do not agree.

 Rule 11 is intended to discourage pleadings that are "frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith." *Zaldivar,* 780 F.2d at 831. "Simply put, subjective good faith no longer provides the safe harbour it once did." *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 253 (2nd Cir.1985). Rather, "[t]he test is now an objective one of reasonableness." *Eavenson, Auchmuty & Greenwald v. Holtzman,* 775 F.2d 535, 540 (3rd Cir.1985). We have already held that the summary judgment was proper. While the trial court did find that counsel for plaintiff made reasonable efforts to determine the factual basis for plaintiff's claim before filing the lawsuit, we do not agree with this conclusion since it is clear from the face of the complaint that the plaintiff was acting in a capacity of a real estate broker. In particular, we quote from the complaint:

\* \* \* \* \* \*

> VIII. On or about the beginning of March, 1984, said negotiations culminated in a meeting between the plaintiff and defendants Trevizo and Hills whereby it was agreed that Hills would provide sufficient funds to forestall foreclosure on the property; that Trevizo and Hills would share equally *in all ownership rights of the property,* including, but not limited to rock and gravel mining rights and backfilling rights; and that Trevizo and Hills would jointly and severally fullfill all obligations owed to the plaintiff as a result of the plaintiff's good faith ef-

---

**2.** Rule 11(a) was amended in 1987 by changing all the masculine pronouns to a gender-neutral noun.

forts in bringing Trevizo and Hills together....

IX. *In recognition of this agreement and as a result of said agreement,* defendant T & H *conveyed the property* to defendants A. Wayne Hills and Carole Elaine Hills, husband and wife, on March 12, 1984.... (Emphasis added)

But even assuming arguendo that there was a proper investigation in the beginning and a justification for filing the lawsuit, after Wright's deposition was taken it was clear that Wright was acting as a real estate broker. The law in Arizona is clear and unambiguous on this point, and this was pointed out to plaintiff's attorneys by the defendants' attorneys.[3] An attorney is obligated to review and examine his position as facts of the case are developed, and if an attorney becomes aware of information which should reasonably lead him to believe there are no facts or a legal basis for his position he may be obligated to reevaluate his earlier certification under Rule 11. *Gilbert v. Board of Medical Examiners,* 155 Ariz. 169, 745 P.2d 617 (1987). Here, the law and the facts support the trial court's conclusion to assess attorney's fees and the trial court did not abuse its discretion in imposing this sanction.

The appellees have asked for and are entitled to attorney's fees in connection with the appeal of this matter which will be awarded upon their compliance with Rule 21(c), Rules of Civil Appellate Procedure, 17B A.R.S.

AFFIRMED.

LIVERMORE, P.J., and HATHAWAY, J., concur.

---

**3.** See *Bonasera v. Roffe,* 8 Ariz.App. 1, 442 P.2d 165 (1968).