868 P.2d 329

**JAMES, COOKE & HOBSON, INC., a Texas corporation, Plaintiff–Appellee,**

v.

**LAKE HAVASU PLUMBING & FIRE PROTECTION, an Arizona general partnership, David N. Danboise, Scott Cunningham, Allen Jedrey, Defendants–Appellants,**

**and**

**Ted BOWEN, Defendant, Real Party in Interest–Appellant.**

No. 1 CA–CV 91–0069.

Court of Appeals of Arizona, Division 1, Department C.

April 29, 1993.

Reconsideration Denied Aug. 20, 1993.

Review Denied March 1, 1994.

Murphy & Posner by Daryl M. Williams and Najia M. Kerrin, Phoenix, for plaintiff-appellee.

Lewis and Roca by John P. Frank, Janet Napolitano and Barbara Anstey, Phoenix, for defendant real party in interest-appellant.

## OPINION

McGREGOR, Judge.

In this appeal, we consider the standard of review applicable to trial court orders imposing sanctions pursuant to Rule 11, Arizona Rules of Civil Procedure, and the trial court's imposition of Rule 11 sanctions against Ted Bowen (Bowen). We hold that we will review all aspects of orders imposing such sanctions for abuse of discretion. We affirm the judgment of the trial court.

### I.

Lake Havasu Plumbing & Fire Protection (Lake Havasu) purchased goods from James, Cooke & Hobson, Inc. (James). Lake Havasu, acting as a subcontractor, used the majority of the goods on a construction project in Yuma County. In June 1987, James filed a complaint on open account against Lake Havasu and one of its partners, David N. Danboise (Danboise), alleging that Lake Havasu owed James $31,342 plus interest to the date of the filing of the complaint, a total of $31,731. The complaint also named the Yuma project's general contractor as a defendant and alleged, in a second count, that the general contractor had guaranteed payment of $30,322 of the amount Lake Havasu owed to James.

To its complaint, James attached five invoices sent to Lake Havasu totaling $31,342. James also attached a letter in which Danboise informed the general contractor "of a commitment to pay James, Cooke & Hobson" and discussed the method by which Lake Havasu would pay $31,731.59.

Bowen, an attorney, filed an answer on behalf of Lake Havasu and Danboise. The relevant portion of the answer admitted "that a contract or contracts do exist involving plaintiff and these answering defendants," but denied "that defendants are indebted to plaintiff for the amount set forth in the complaint, or any other amount, and demand

strict proof." The answer also made a demand for items of account.[1]

In December 1987, James moved for summary judgment. The trial court delayed hearing the motion due to the automatic stay that resulted from a bankruptcy filing by Lake Havasu. Bowen never filed a response to the motion for summary judgment. In March 1988, the trial court entered judgment against the partners for $31,342 plus prejudgment interest, costs and attorneys' fees. In January 1990, the trial court entered judgment against Lake Havasu for $31,342 plus prejudgment interest, costs and attorneys' fees.

In April 1990, James requested that the court impose sanctions against Bowen under Rule 11 and Ariz.Rev.Stat.Ann. ("A.R.S.") §§ 12–349 and 12–341.01.C. James asserted that Bowen was responsible for numerous improper actions in the case, including filing an answer denying the debt although he knew and later admitted that the debt had always been valid.

In response, Bowen argued that he should not be penalized for zealously advocating for his clients. Bowen questioned the tactics of James's attorneys, stating that James had refused to accept a $40,000 settlement offer.[2] Bowen also asserted that the amount of fees sought by multiple attorneys for James was unreasonable.

The trial court imposed sanctions, ordering Bowen, Lake Havasu and its partners to reimburse James $38,966.25 plus interest for attorneys' fees and costs. In explaining its reasons for awarding sanctions, the court stated: "The court finds that there was no valid reason for the partnership to deny plaintiff's complaint, and that a general denial was filed to cause unnecessary delay. This resulted in a needless increase in the cost of litigation to plaintiff."

After the trial court denied a motion for new trial, the original defendants and Bowen, the latter as an additional defendant and real party in interest, appealed from the order imposing sanctions. Only Bowen filed an appellant's brief, challenging only the grounds upon which the trial court awarded sanctions.[3] Bowen does not contest the amount of the sanctions. We have jurisdiction pursuant to A.R.S. §§ 12–2101.B, –2101.C, and –2101.F.

## II.

### A.

In *Wright v. Hills,* 161 Ariz. 583, 780 P.2d 416 (App.1989), this court adopted the three-tiered standard of review for orders imposing sanctions under Rule 11 previously defined in *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 828 (9th Cir.1986). Under this standard, appellate courts review trial courts' factual determinations under a clearly erroneous standard, legal conclusions *de novo,* and the imposed sanction's appropriateness for abuse of discretion. *Wright,* 161 Ariz. at 589, 780 P.2d at 422. We followed this federal standard of review because Arizona's Rule 11 is

---

1. In October 1987, James filed an amended complaint, which corrected the name of the general contractor and added Scott Cunningham and Allen Jedrey as additional partners in Lake Havasu. The remainder of the complaint was the same as the original. Bowen filed an answer on behalf of Cunningham and Jedrey in which they admitted "that there may be a debt owing to plaintiff, but the exact circumstances or amount thereof is unknown" and demanded strict proof. The record does not contain an answer of Lake Havasu or Danboise to the amended complaint.

2. As James points out, the terms of the "$40,000 settlement offer" actually offered somewhat less. The offer proposed that 1) James would keep the $7,039 it had already garnished, 2) James would "keep" $15,000 it had attempted to garnish from one of Lake Havasu's debtors "if they can get it," and 3) James would receive a second mortgage on a property in which James alleged Lake Havasu had no equity.

3. On appeal, Bowen takes that position that the trial court's award of sanctions relied only upon Rule 11. Because we find the trial court's award of sanctions under Rule 11 did not constitute an abuse of discretion, we do not consider whether the court also relied upon either A.R.S. § 12–341.01.C or 12–349 or whether an award under either of those statutes would have been an abuse of discretion. We also do not consider whether Bowen waived the argument that the court erred in awarding fees pursuant to those statutes by failing to make that argument on appeal. *See DeElena v. Southern Pac. Co.,* 121 Ariz. 563, 572, 592 P.2d 759, 768 (1979) (issues not argued on appeal are treated as abandoned); Ariz.R.Civ. App.P. 13(a)(4).

"essentially identical to the federal rule...."
*Id.* at 588, 780 P.2d at 421.

Shortly after we decided *Wright,* however, the United States Supreme Court rejected the *Zaldivar* three-tiered standard of review in favor of an abuse of discretion standard for all aspects of orders imposing Rule 11 sanctions. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990). In *Cooter,* the Supreme Court noted that appeals challenging the imposition of sanctions pursuant to Rule 11 involve three types of issues: (1) factual issues regarding the attorney's prefiling inquiry and "the factual basis of the pleading or other paper"; (2) legal issues "considering whether a pleading is 'warranted by existing law or a good faith argument' for changing the law and whether the attorney's conduct violated Rule 11"; and (3) whether the trial court appropriately exercised its discretion "to tailor an 'appropriate sanction.'" *Id.* at 397, 110 S.Ct. at 2457. The Supreme Court, observing that federal appellate courts typically reviewed the trial court's selection of a sanction under an abuse of discretion standard and its findings of fact under a clearly erroneous standard, concluded that, in practice, the abuse of discretion and clearly erroneous standards are indistinguishable in these aspects of Rule 11 proceedings. "A court of appeals would be justified in concluding that a district court had abused its discretion in making a factual finding only if the finding were clearly erroneous." *Id.* at 399, 110 S.Ct. at 2458.

The Court then considered whether an appellate court must defer to the lower court's legal conclusions in Rule 11 proceedings. Noting that distinguishing between legal and factual issues is "particularly difficult in the Rule 11 context[,]" and that a trial court "is better situated than the court of appeals to marshall the pertinent facts and apply the fact-dependant legal standard mandated by Rule 11[,]" *id.* at 401, 110 S.Ct. at 2459, the Court held a deferential standard should apply to legal conclusions also. The Court therefore concluded that an appellate court

should not apply the three-tiered standard of review set out in *Zaldivar* and followed in *Wright.* "Rather, an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination." [4] *Id.* 496 U.S. at 405, 110 S.Ct. at 2461.

■ By rejecting the *Zaldivar* standard, the United States Supreme Court removed the underpinnings of the standard of review we adopted in *Wright.* Because Arizona's Rule 11 is identical to the federal rule and because we agree with the analysis of *Cooter,* we adopt the *Cooter* holding and will apply an abuse of discretion standard to all aspects of orders imposing sanctions under Rule 11.

### B.

#### 1.

■ The standards of conduct with which a lawyer must comply to avoid sanctions under Rule 11 are well-defined. A lawyer's signature on a pleading or other document constitutes certification that the lawyer has read the pleading, that "to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed ... to harass or to cause unnecessary delay or needless increase in the cost of litigation." Rule 11(a). Rule 11 therefore requires that before signing a pleading, a lawyer possess a good faith belief, formed on the basis of a reasonable investigation, that a colorable claim or defense exists. *Boone v. Superior Court,* 145 Ariz. 235, 241, 700 P.2d 1335, 1341 (1985).

An attorney violates Rule 11 by filing an answer if he knows or should have known, by a reasonable investigation of fact and of law, that an asserted defense is insubstantial, frivolous, groundless or otherwise unjustified. *Id.* We evaluate the attorney's conduct under an objective standard of reasonableness.

---

4. As the Supreme Court noted, applying the abuse of discretion standard does not prevent an appellate court from correcting a trial court's legal error. "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter,* 496 U.S. at 405, 110 S.Ct. at 2461.

*Wright,* 161 Ariz. at 589, 780 P.2d at 422 (quoting *Eavenson, Auchmuty & Greenwald v. Holtzman,* 775 F.2d 535, 540 (3d Cir. 1985)); *Boone,* 145 Ariz. at 241, 700 P.2d at 1341.

In this action, the trial court based its award of sanctions on its findings that "there was no valid reason for the partnership to deny plaintiff's complaint, and that a general denial was filed to cause unnecessary delay" thus resulting "in a needless increase in the cost of litigation to plaintiff." [5] Our inquiry, then, is whether the trial court abused its discretion, either in making its findings or in concluding that they constituted a violation of Rule 11 sufficient to justify imposing a sanction.

### 2.

Bowen argues that the trial court abused its discretion in finding he had no valid reason to deny the allegations of the complaint. He contends that the denial was appropriate because James framed its complaint in the alternative and alleged that the general contractor also was liable. Therefore, Bowen argues, the complaint "on its face alleges two different amounts, one owing from Lake Havasu and the other from [the general contractor]. Mr. Bowen reasonably could have been in doubt as to which of the two had whatever the obligation was." We disagree.

The complaint specifically alleges that the general contractor is liable as a guarantor of Lake Havasu. The differing amounts set out in the two counts of the complaint reflect the total goods purchased by Lake Havasu on the one hand and the goods purchased by Lake Havasu that were used in the general contractor's project on the other. Given the clear language of the complaint, a knowledgeable attorney could not reasonably have failed to understand why the two counts sought different relief or which party allegedly owed each obligation. Bowen's assertion to the contrary is particularly unreasonable in light of the invoices and letter attached to the complaint. Moreover, even if Bowen had some question after analyzing the complaint, he had an affirmative obligation to investigate the allegations in the complaint to determine if Lake Havasu owed the debt and, if so, what amount was owed. *Boone,* 145 Ariz. at 241, 700 P.2d at 1341. Nothing in the record indicates that he did so.

Bowen next argues that the denial was appropriate because Bowen's decision "to put plaintiff to its proof" as to the amount due was not objectively unreasonable. Rule 11, however, requires an attorney to undertake a reasonable investigation to determine whether an answer is well grounded in fact. An answer denying liability complies with Rule 11 only if a prefiling investigation uncovers some information to support the assertions in the answer. *See Brubaker v. Richmond,* 943 F.2d 1363, 1373 (4th Cir.1991).

To avoid sanctions, therefore, Bowen needed to show at least that he had some information available at the time he filed the answer that provided a basis for a good faith belief that James could not establish the amount owed. Bowen made no such showing before the trial court and has pointed to no factual information in the record sufficient to justify a conclusion that this defense was plausible.[6] Moreover, our own examination of the record discloses no basis for Bowen's

---

**5.** Bowen raises no issue concerning whether the trial court's findings are sufficiently specific to support its award of attorneys' fees. *See State v. Richey,* 160 Ariz. 564, 565, 774 P.2d 1354, 1355 (1989) (trial court must set forth specific findings to justify an award of fees pursuant to A.R.S. § 12–341.01.C or 12–349). Although these findings lack detail, they are sufficient for us to determine whether the court abused its discretion in imposing sanctions against Bowen. We encourage trial courts to make more detailed findings to assist us in conducting our review on appeal.

**6.** To support his argument that a defendant may always challenge a plaintiff's ability to prove a debt, Bowen relies solely upon *Continental Sweden Corp., Ltd. v. M.P. Howlett, Inc.,* 719 F.Supp. 1202 (S.D.N.Y.1989). The court there stated that, by later conceding liability, the defendants did not admit that they lacked a good faith basis for denying liability earlier, "even if the basis for that denial was a question of the plaintiff's ability to prove it." *Id.* at 1216. We do not find *Continental Sweden Corp.* persuasive, however, because the court's underlying reasoning is not at all clear. Further, to the extent that this language supports the proposition that a party may always contest a claim, even without a reasonable belief to do so, we simply disagree.

suggestion that he had any reason, based upon a belief objectively formed after reasonable inquiry, for concluding that James could not establish the amount of the debt owed. *See Bay State Towing Co. v. Barge American 21*, 899 F.2d 129, 131 (1st Cir.1990).

We therefore conclude that the trial court did not abuse its discretion by finding that "there was no valid reason for the partnership to deny plaintiff's complaint."

### 3.

██ Bowen also argues that the trial court abused its discretion by finding that he denied the complaint "to cause unnecessary delay," which resulted "in a needless increase in the cost of litigation to plaintiff." Bowen asserts that no delay resulted from the answer because he acknowledged the existence of the debt soon after the answer was filed and acknowledged the contract in the answer. Any delay, he concludes, resulted from other factors, such as the bankruptcy proceedings, that were not directly attributable to the answer. We are not persuaded.

We have already determined that the trial court did not abuse its discretion in finding that Bowen denied the complaint for no valid reason. His subsequent "admission" does not eliminate the initial delay caused by denying the debt. Bowen's filing of an unsubstantiated answer certainly caused some delay in the litigation, even if a substantial portion of the delay did not arise from the answer alone.

Furthermore, the question the trial court answered was whether the *purpose of filing* the answer was to cause unnecessary delay. The court, therefore, properly considered Bowen's state of mind at the time he filed the answer, not at the time of subsequent events that caused additional delay. *See Thomas v. Capital Security Services, Inc.*, 836 F.2d 866, 874–75 (5th Cir.1988) (citing Fed.R.Civ.P. 11 advisory committee notes) ("the court should consider the state of mind of the attorney 'when the pleading or other paper was signed' "). Because Bowen had no valid reason for denying the existence or amount of the debt, we conclude the trial court did not abuse its discretion in finding that Bowen filed the answer to cause delay and needlessly increased the cost of litigation.[7]

### III.

For the foregoing reasons, we conclude that the trial court did not abuse its discretion in imposing sanctions under Rule 11. We affirm the judgment awarding attorneys' fees and costs against Bowen.

TOCI, J., concurs.

GERBER, Judge, specially concurring.

I write specially to emphasize not the rule we adopt in reviewing Rule 11 sanctions but rather the important holding that a defense attorney may not routinely file a perfunctory denial of every complaint. Admittedly, there are antediluvian court opinions to that effect: *See Continental Sweden, supra.*

These outmoded cases perpetuate the sporting view that every lawsuit should be akin to throwing Christians to lions. This view has not yet died but deserves to do so. F. Lee Bailey once wrote that a lawyer should use the rules "to frustrate the law." Alan Dershowitz wrote recently that a good lawyer will "hide at least some of the truth." Contrary to these views is Rule 11's unstated premise that every lawyer is a debtor not only to the legal profession but to society at large, and this debt cannot be paid by deceptive pleadings, even when filed in the client's best interest.

Rule 11 requires the answer to a complaint to reveal an honest, uninflated appraisal of a client's case to the court and to the opposi-

---

7. Bowen suggests that the trial court may have failed to limit its award of attorneys' fees to those caused by the sanctionable acts on which the court relied. *See, e.g., Rathbun v. Warren City Schools (In re Ruben)*, 825 F.2d 977, 990 (6th Cir.1987) (limit fees imposed pursuant to Rule 11 to those reasonably incurred to meet groundless, bad-faith moves). In this case, however, Bowen failed to provide a transcript of the hearing at which the trial court considered appellees' request for sanctions. Absent a transcript, we will presume the evidence presented was sufficient to sustain the court's findings. *Archer v. Bd. of Supervisors of Pima County*, 166 Ariz. 106, 107, 800 P.2d 972, 973 (1990); *Retzke v. Larson*, 166 Ariz. 446, 449, 803 P.2d 439, 442 (App.1990).

tion, even if such an honest revelation hurts the client.