NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CHRISTOPHER E. BAIKER, *Plaintiff/Appellee,*

*v.*

ASHLEY DORRANCE KAPLAN, *Defendant/Appellant.*

No. 1 CA-CV 20-0627
FILED 10-12-2021

Appeal from the Superior Court in Maricopa County
No. CV2014-091912
The Honorable Janice K. Crawford, Judge

**AFFIRMED**

COUNSEL

Limón-Wynn Law PLLC, Tempe
By Monica A. Limón-Wynn
*Co-Counsel for Plaintiff/Appellee*

Jones, Skelton & Hochuli, PLC, Phoenix
By Eileen Dennis GilBride
*Co-Counsel for Plaintiff/Appellee*

Dickinson Wright PLLC, Phoenix
By P. Bruce Converse, Scott A. Holcomb, Paxton D. Endres
*Counsel for Defendant/Appellant*

---

**MEMORANDUM DECISION**

Judge David B. Gass delivered the decision of the court, in which Presiding Judge D. Steven Williams and Judge James B. Morse Jr. joined.

---

**G A S S**, Judge:

¶1          The superior court granted summary judgment against mother, finding she sought to modify the parents' Amended and Restated Joint Custody Agreement (Custody Agreement) without a good-faith basis. Mother appeals. Finding no error, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2          From 2010 through March 2012, the parents engaged in extensive litigation in their dissolution matter, including custody—now legal decision-making—and parenting time issues involving their two minor children. *Baiker v. Kaplan (Baiker I)*, 1 CA-CV 15-0033, 2016 WL 3101783 at *1, ¶ 2 (Ariz. App. June 2, 2016) (mem. decision). The underlying facts are unchanged from *Baiker I*, and this appeal arises out of the same disputed 2013 summer-vacation schedule. *See id.*

¶3          In 2012, the parents entered into the Custody Agreement and a Separate Property Agreement (Property Agreement). The Property Agreement provides either mother or father generally may seek to enforce the Custody Agreement. But the Property Agreement establishes only four grounds under which a parent may seek to modify the Custody Agreement without breaching the Property Agreement. The four grounds are: (a) a child has significant health issues and a change is in the child's best interests; (b) a bona fide and genuine issue exists as to the other parent's physical or mental ability to parent; (c) a parent is substantially non-compliant with the Custody Agreement; or (d) father moves within 100 miles of mother. To avoid breaching the Property Agreement, the parent seeking modification must have a good-faith belief one of the four enumerated grounds applies.

¶4          The Property Agreement includes a "financial incentive" to discourage both parents from breaching its modification provisions. Under the Property Agreement, mother agreed to give father $1,000,000 in supplemental funding to purchase a home near where she lived with the

children in California. Father ultimately would own the home as his sole and separate property. But if mother were to seek to modify the Custody Agreement without a good-faith basis as discussed above, the Property Agreement would accelerate her obligations to transfer the supplemental funds and the home to father.

¶5 In 2012, the superior court approved the Custody Agreement and incorporated the Property Agreement into its order. The Custody Agreement gave father priority in scheduling summer vacations in odd-numbered years starting in 2013. In 2013—the first summer father had summer-vacation priority under the Custody Agreement and over father's objection—mother booked two lengthy vacations with the children. *Id.* at *1, ¶ 3.

¶6 Father sued mother, seeking to enforce the Custody Agreement and asserting she breached the Property Agreement and owed him the specified financial incentives. *Id.* at *1, ¶ 7. The superior court dismissed father's complaint. *Id.* at *2, ¶ 8. This court reversed, ruling mother sought to modify the Custody Agreement. *Id.* at *3, ¶¶ 12, 16. This court then remanded for the superior court to determine whether—when mother sought the modification—she acted in good faith under the Property Agreement. *Id.* at ¶ 13.

¶7 On remand and after additional discovery, the parties filed cross-motions for summary judgment. The superior court denied mother's motion and granted father's motion, finding mother sought the modification in violation of the Property Agreement. The superior court awarded father $142,071.86 in attorney fees and costs under A.R.S. §§ 12-341 and 12-341.01. Mother timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1 and 12-2101.A.1.

## ANALYSIS

¶8 Mother appeals the superior court's finding she lacked a good-faith basis to seek to modify the 2013 summer-vacation schedule. She argues she did not breach the Property Agreement, a good-faith determination is not appropriate for summary judgment, and the Property Agreement's custody-related financial incentives are unenforceable.

**I.    Summary judgment is appropriate because mother failed to show a genuine dispute of material fact.**

> **A.    Mother failed to show a genuine dispute as to the four enumerated modification grounds provided under the Property Agreement.**

**¶9**        Summary judgment is appropriate when the moving party shows "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). To carry its burden of proof, the party seeking summary judgment must submit "undisputed admissible evidence that would compel any reasonable juror to find in its favor on every element of its claim." *Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 293, ¶ 20 (App. 2010). This court views the facts and reasonable inferences in the light most favorable to the non-moving party—here, mother. *See Rasor v. Nw. Hosp., LLC*, 243 Ariz. 160, 163, ¶ 11 (2017).

**¶10**        On appeal, mother argues she presented sufficient evidence from which a jury reasonably could conclude she had a good-faith basis to believe father's substantial non-compliance with the Custody Agreement—the third modification ground—justified her modification request. But mother's depositions belie her claim she acted under the third, or any other, enumerated ground.

**¶11**        After remand, mother gave two depositions. During those depositions, mother acknowledged she understood father had priority vacation scheduling in 2013 and father's decision-making controlled. But mother expressly testified she pursued a modification so her 2013 vacation decisions would control despite believing none of the four enumerated grounds applied, including the third:

> FATHER'S COUNSEL: And item (c), that says that a party, either of you, can move to modify the [Custody Agreement] if either party is in substantial non-compliance. That wasn't the situation for your Hawaii vacation or your Canada vacation, correct?
>
> MOTHER: Correct.

Mother responded with equal clarity and detail when she denied believing the other three grounds applied. And, to resolve any uncertainty, mother twice denied believing she had any grounds under the Custody Agreement:

FATHER'S COUNSEL: And at the time in 2013, you didn't believe that any of these exceptions existed, did you?

MOTHER'S COUNSEL: Object to the form.

MOTHER: No.

. . . .

FATHER'S COUNSEL: Okay. And in 2012 when you -- in 2013 when you filed the response . . . you did not believe that any of those four exceptions that we just talked about existed, correct?

MOTHER'S COUNSEL: Object to the form.

MOTHER: Correct.

¶12        In short, mother unequivocally repudiated believing any of the four grounds existed. Father, therefore, met his initial burden of showing no genuine issue of disputed material fact.

¶13        Mother's sworn, unequivocal deposition testimony defeats her present attempt to assert she had a good-faith belief an enumerated ground applied. Mother brought forth no evidence to overcome her express testimony. *See Wright v. Hills*, 161 Ariz. 583, 587–88 (App. 1989). Instead, she cites to her April 22, 2020, declaration. But "[a] party's affidavit which contradicts [her] own prior deposition testimony should be disregarded on a motion for summary judgment." *Id.* Mother asserts no exception to the rule from *Wright*. *See id.* Mother does not argue she "was confused at the deposition" or has since discovered new evidence. *See id.* at 588. And to the extent mother's use of the word "response" in her declaration is an attempt to create a fact issue, it falls flat under *Wright*. *See id.* Mother's response and request to modify are one in the same, and as to that document, mother squarely addressed each of the grounds in her deposition. *See Baiker I*, 1 CA-CV 15-0033 at *3, ¶ 12.

¶14        The only other evidence mother points to is her contemporaneous argument father was not acting in the children's best interests. But, as mother correctly acknowledges, whether father substantially complied or acted in the children's best interests is not at issue. At issue is whether mother had a good-faith belief one of the four Property Agreement grounds justified her modification effort. Mother's deposition shows, definitively, she did not. Mother, therefore, raises no genuine factual dispute. *See Martin v. Schroeder*, 209 Ariz. 531, 534, ¶ 12 (App. 2005) ("[a]

'genuine' issue is one that a reasonable trier of fact could decide in favor of the party adverse to summary judgment on the available evidentiary record").

¶15    For the same reason we reject mother's argument her state of mind is an issue for a jury and not for summary judgment. Mother testified she did not believe any of the four enumerated modification grounds applied. Her testimony is uncontroverted, and no factual dispute remains for a reasonable factfinder to resolve. *See Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990) ("affidavits . . . that tend to contradict the affiant's sworn testimony at deposition, and similar items of evidence may provide a 'scintilla' or create the 'slightest doubt' and still be insufficient to withstand a motion for summary judgment").

### B.    Because mother sought modification, the Property Agreement's enforcement exemption does not apply.

¶16    Mother contends father violated his general duty under the Property Agreement and the Custody Agreement to act in the children's best interests and to resolve amicably any differences when he refused to accommodate her vacation plans. She argues his failure to agree to her vacation plans allowed her to seek enforcement under the sentence in the Property Agreement that provides actions to enforce the Property Agreement or the Custody Agreement "shall not be deemed a breach."

¶17    Mother characterizes her 2013 response as an effort to enforce the Custody Agreement, and she undisputedly is entitled to seek to enforce it. But mother also sought to modify the Custody Agreement. *Baiker I*, 1 CA-CV 15-0033 at *3, ¶ 12. That determination is law of the case, and we will not revisit it here. *See Emps. Mut. Liab. Ins. Co. of Wis. v. Indus. Comm'n*, 115 Ariz. 439, 441 (App. 1977). Because mother sought modification, she foreclosed resort to the Property Agreement's enforcement exemption.

¶18    Mother's reliance on her good-faith belief in seeking enforcement is misplaced. The Property Agreement's good-faith provision only applies to the four modification *grounds*, not the enforcement exemption. Accordingly, mother failed to show a genuine dispute as to whether she breached the Property Agreement.

## II.    As to mother, the Property Agreement's financial incentives regarding modification are enforceable.

¶19    Mother argues the financial incentives regarding modification are unenforceable because they constitute an *in terrorem*

penalty clause and are against public policy. On summary judgment, the superior court disagreed and found this court in *Baiker I* implicitly determined the financial incentive provisions were enforceable. Though the parties briefed and argued enforceability at that time, this court did not resolve it then. We exercise our discretion to address the merits now.

¶20         Settlement agreements are contracts. *Emmons v. Super. Ct.*, 192 Ariz. 509, 512, ¶ 14 (App. 1998). Written agreements between the parties to a family law case are presumed to be "valid and binding[,]" and any party challenging the agreement has the burden of proving otherwise. Ariz. R. Fam. Law P. 69(a)(1), (c); *see also* A.R.S. § 25-317.B. This court reviews *de novo* whether a settlement agreement is enforceable. *Robertson v. Alling*, 237 Ariz. 345, 347, ¶ 8 (2015).

¶21         Arizona generally presumes "private parties are best able to determine if particular contractual terms serve their interests." *1800 Ocotillo, LLC v. WLB Grp., Inc.*, 219 Ariz. 200, 202, ¶ 8 (2008). When parties bind themselves with clear and unambiguous terms, the court "must give effect to the contract as written." *Estes Co. v. Aztec Constr., Inc.*, 139 Ariz. 166, 168 (App. 1983). This court enforces contract terms unless they are unconscionable, illegal, or otherwise against public policy. *See Dobson Bay Club II DD, LLC v. La Sonrisa de Siena, LLC*, 242 Ariz. 108, 115, ¶ 39 (2017).

## A.    The Property Agreement does not violate public policy.

¶22         As a matter of public policy, Arizona prioritizes the best interests of the children in family law matters. *See, e.g.*, *Nold v. Nold*, 232 Ariz. 270, 274, ¶ 14 (App. 2013); *Downs v. Scheffler*, 206 Ariz. 496, 499, ¶ 7 (App. 2003); *Canty v. Canty*, 178 Ariz. 443, 448 (App. 1994). Parents may not by agreement limit the court's ability to review issues in their children's best interests. *See Albins v. Elovitz*, 164 Ariz. 99, 101–02 (1990) (financial agreements regarding parenting modifications "will be enforced only so long as the interest of the child is not adversely affected").

¶23         The Property Agreement does not adversely affect the children's best interests or alter the superior court's control. The Property Agreement controls the transfer of previously pledged supplemental funds in the event of a breach. The express purpose of the financial incentives is to limit contentious litigation. Moreover, the Property Agreement does not—and did not here—circumscribe the superior court's adjudication of parental disputes, and it does not supplant any best-interests determination. Accordingly, the Property Agreement is consistent with

Arizona's public policy prioritizing the children's best interests in family law matters.

**B.** **The Property Agreement creates an enforceable unilateral acceleration clause against mother.**

¶24 Mother argues the Property Agreement creates an unenforceable *in terrorem* penalty "designed to create a draconian economic threat to deter Mother from seeking" modification. *See Albins*, 164 Ariz. at 102. We disagree.

¶25 A penalty is designed to punish a party for a breach of contract. *Aztec Film Prods., Inc. v. Quinn*, 116 Ariz. 468, 470 (App. 1977) (distinguishing a penalty from a reasonable liquidated damage provision). This court reviews whether the Property Agreement's financial incentives as to mother are a penalty as a matter of law. *See Pima Sav. & Loan Ass'n v. Rampello*, 168 Ariz. 297, 300 (App. 1991).

¶26 If mother were to breach the Property Agreement's modification provisions, all remaining supplemental funds "shall be *accelerated* and paid" to father. (Emphasis added.) The Property Agreement regulates the transfer terms of the principal mother pledged under a "defined schedule of repayment." *See Webster Bank NA v. Mutka*, 250 Ariz. 498, 500, ¶ 10 (App. 2021) (quoting *Mertola, LLC v. Santos*, 244 Ariz. 488, 491, ¶ 16 (2018)). When a fixed debt is payable in installments, the unmatured future installments may be subject to an acceleration clause. *See id.* Here, the Property Agreement creates a unilateral acceleration clause by accelerating the transfer of supplemental funds in the event of mother's breach. *See id.* An acceleration clause is not a penalty, but rather an enforceable contract term determining when a debt is payable. *See Ciavarelli v. Zimmerman*, 122 Ariz. 143, 144 (App. 1979). Accordingly, the Property Agreement is enforceable as to mother's obligation.

**III.** **Father was entitled to attorney fees in the superior court.**

¶27 The superior court awarded father contract attorney fees under A.R.S. § 12-341.01. Because we affirm the superior court, we affirm the attorney fees award against mother.

**ATTORNEY FEES ON APPEAL**

¶28 Both parents seek attorney fees on appeal under § 12-341.01. As the successful party, we award father his reasonable attorney fees and costs on appeal upon compliance with ARCAP 21.

**CONCLUSION**

¶29        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA