723 P.2d 686

**UNIVERSITY MECHANICAL CON-
TRACTORS OF ARIZONA, INC.,
Plaintiff/Appellee,**

**v.**

**PURITAN INSURANCE COMPANY,
Garnishee/Appellant.**

**No. 2 CA–CIV 5296.**

Court of Appeals of Arizona,
Division 2, Department A.

May 8, 1985.

Molloy, Jones, Donahue, Trachta, Child-
ers & Mallamo, P.C. by Gary F. Howard,
Tucson, for plaintiff/appellee.

Kimble, Gothreau, Nelson & Cannon,
P.C. by William Kimble and Stephen Kim-
ble, Tucson, for garnishee/appellant.

## OPINION

HOWARD, Judge.

The issue in this case is whether the insurance policy issued by Puritan Insurance Company (Puritan) to its insured, Insta-Foam Products, Inc. (Insta-Foam), covered appellee's loss. We hold that it did not and that the trial court clearly erred in finding otherwise.

Appellee University Mechanical Contractors of Arizona, Inc. (University) had a contract to construct a solar field at the Yuma Operations Center, Yuma Proving Grounds. It purchased pre-insulated pipe and double O-ring couplings for the solar field from Insta-Foam. The pipe was delivered and installed by University in November and December, 1978. Sometime after the installation, leaks developed in the system. Upon examination it was found that the O-rings had been cut during the installation due to improper size or installation and/or the fact that there was a sharp edge in the groove where the O-rings fit, causing the O-rings to be cut when the couplings were forced into place. The sharp edges were beveled and the pipe re-installed. This installation was completed in the early months of 1979. After completion of the installation, the system was pressure-checked for leaks and none were discovered. It was believed that the problems had been successfully resolved.

The pipe remained sealed and unused for a period of approximately one year after the installation was completed. This delay was not caused by either Insta-Foam or University but was caused by the failure of another sub-contractor on the job. It was not until February or March 1980 that the other contractor solved its problem and the system was then put on line in late March and early April, 1980. After approximately 10 days of operation, numerous leaks were found in the system.

Insta-Foam was advised of the leaks in either late April or early May, 1980. In May, University undertook to repair the leaks and submitted bills and invoices to

Insta-Foam for expenses incurred from April through July, 1980, for material, labor and equipment rental. Those charges amounted to $96,599.72.

When University and Insta-Foam were not able to resolve the matter between themselves, University sued Insta-Foam on December 23, 1980, for breach of contract and breach of implied warranties of merchantability and fitness. The case was heard by the trial judge, sitting without a jury, who made findings of fact, finding that the components supplied by Insta-Foam were not placed in operation until December 1979 and that within two weeks the system began to leak. Puritan claims in its brief that the finding by the court that the system became operational in December 1979 is contrary to the evidence, but as will be seen, it makes no difference as to the outcome of this case. The court, pursuant to its findings, awarded judgment to University against Insta-Foam in the sum of $96,599.72. University then filed a writ of garnishment against Puritan, which answered alleging that there was no insurance that covered the loss sustained by University. A trial was held on the issue of coverage by Judge Fisher, who was not the same judge who tried the action by University against Insta-Foam. Judge Fisher entered findings of fact and conclusions of law, holding that the policy of insurance issued by Puritan was in force and effect at all material times and provided coverage for the loss sustained by University. Appellant contends there are several reasons why there was no coverage under the policy. We need discuss only one, the most obvious, in order to dispose of this case.

A reading of the policy issued by Puritan discloses that the policy period was October 13, 1978, through October 13, 1979. Subject to certain specified exclusions, the policy provided coverage for "property damage to which this insurance applies, caused by an occurrence...."

The policy defines the term "property damage" as:

"(1) Physical injury to or destruction of tangible property *which occurs during the policy* period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such a loss of use is caused by an occurrence during the policy period." (Emphasis added)

The evidence in this case is uncontroverted that the leaks which gave rise to this claim against Insta-Foam occurred in December 1979 at the earliest.

The policy also defines the "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

The clear and unambiguous language of the policy requires that there be an accident which causes property damage and that the property damage must occur during the policy period. The language in the Puritan policy is analogous to the provision of the insurance policy in the case of *Outdoor World v. Continental Casualty Company*, 122 Ariz. 292, 594 P.2d 546 (App.1979).[1] There the policy defined the word "occurrence" as follows:

"[O]ccurrence means an accident, including injurious exposure to conditions, which results, *during the policy period,* in bodily injury or property damage neither expected nor intended from the standpoint of the insured; ..." (Emphasis in original) 122 Ariz. at 293, 594 P.2d at 547.

The court in *Outdoor World* held that under the terms of the policy the time of the occurrence of an accident was not the time the wrongful act was committed but the time when the complaining party was actually damaged.

Citing *Darner Motor Sales v. Universal Underwriters Insurance Company*, 140 Ariz. 383, 682 P.2d 388 (1984), appellee contends that the policy should be construed to afford coverage. We do not

---

1. See Annot. 37 A.L.R.4th 382 § 3 "Insurance-   Time of Event" (1985).

agree. *Darner* is not a panacea to be applied to any case in which a litigant wishes to avoid the language of a contract. The requirement that the damage occur during the policy period is not unreasonable, oppressive or bizarre. It does not eviscerate the non-standard terms of the policy explicitly agreed to, nor does it eliminate the dominant purpose of the transaction.

Here, the policy expressly limits its coverage to accidents occurring during the policy period. Since the accident did not occur until at least two months after the policy had expired, there was no coverage.

Reversed with directions to enter judgment in favor of Puritan Insurance Company and against University Mechanical Contractors of Arizona, Inc.

BIRDSALL, P.J., and FERNANDEZ, J., concur.