IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

NOV 26 2008

COURT OF APPEALS
DIVISION TWO

ALVIN S. RATLIFF,                      )
                                       )      2 CA-CV 2007-0153
            Plaintiff/Appellee,        )      DEPARTMENT B
                                       )
      v.                               )      O P I N I O N
                                       )
DANIEL M. HARDISON, SR.,               )
                                       )
            Defendant/Appellant.       )
                                       )

APPEAL FROM THE SUPERIOR COURT OF COCHISE COUNTY

Cause No. CV-200600747

Honorable Stephen M. Desens, Judge

AFFIRMED

---

Good Law, P.C.
  By Gregory E. Good, Robert J. Curtis,                                      Tucson
  and Wesley P. Mehl                                  Attorneys for Plaintiff/Appellee


Stoops, Denious, Wilson & Murray, PLC
  By Michael T. Denious                                                     Phoenix
                                                    Attorneys for Defendant/Appellant

---

E S P I N O S A, Judge.

**¶1**        In this contract action, Daniel Hardison, Sr. appeals from the trial court's order

granting partial summary judgment in favor of appellee Alvin Ratliff on his complaint for

damages arising from Hardison's breach of his agreement to purchase Ratliff's farm. For the reasons below, we affirm.

**Facts and Procedural History**

¶2 We review the facts in the light most favorable to the party against whom summary judgment was entered. *Andrews v. Blake*, 205 Ariz. 236, ¶ 12, 69 P.3d 7, 11 (2003). In January 2006, Hardison entered into a contract to purchase 1,020 acres of farmland in Cochise County from Ratliff for $3,500,000 and deposited $100,000 of that amount in escrow as earnest money. The agreement provided an escrow closing date of August 1, 2006. Both parties to the transaction were represented by real estate broker Earl Moser.

¶3 In February or March 2006, Hardison learned about A.R.S. § 33-422, which requires, in certain circumstances specified in the statute, that the seller of land execute an affidavit disclosing information about the property at least seven days before it is transferred. When required, the affidavit must include, *inter alia*, information about the ownership and access to roads, flood plain designation, utility services, and zoning. § 33-422(F). Upon receipt of the affidavit, the buyer has five days to rescind the sales contract. § 33-422(D). In February 2006, the title insurance agency issued its commitment for title insurance, stating it had not made a determination of whether the transaction was subject to § 33-422 and that it was the parties' responsibility to do so. Hardison testified at his deposition that he had believed the statute applied to this transaction, but he neither mentioned this belief to Ratliff or Moser nor inquired about the affidavit.

2

**¶4**       On July 22, Hardison left Ratliff the following telephone message:

> What I'd like to do, Buddy, is buy that section of deeded land and section of state land, and offer you an additional $1.5 million on top of the $100,000 we've given you. We're sorry about the offer, but we're—we're really negative in what we see around here. I just thought (indiscernible) and maybe we can negotiate, and arm wrestle or whatever it takes, and see if we can make a deal, maybe not. . . .

At his deposition, Hardison testified that, "toward the end of July," he had decided not to purchase "the farm" and notified both Ratliff and his banker of that decision as well. After escrow did not close on August 1, Ratliff's attorney sent Hardison a letter demanding that the sale close by August 9, stating that if it did not, litigation would follow.

**¶5**       On August 9, Hardison and Ratliff spoke on the telephone and Hardison said he still wanted to purchase the land, but he wished to re-negotiate the terms of purchase, at a reduced price or to buy only a portion of the land, which Ratliff refused. During another conversation with Ratliff on August 15, Hardison stated he was unable to close on the farm. He said he still wanted to purchase it, but was too "chicken shit" to go through with the deal because of uncertainties in farming and the real estate market and his inability to sell another property he owned.

**¶6**       On August 25, Ratliff sent a letter to Hardison, advising him the contract would be cancelled in thirteen days unless the sale closed, and advised the title agency of the pending cancellation. Hardison's attorney responded on August 30 with a written demand for an affidavit of disclosure pursuant to § 33-422, stating that Hardison would "advise of his intentions with respect to completing the transaction" after he received the affidavit. In a

3

letter dated September 7, Ratliff's attorney rejected the demand and accused Hardison's attorney of "trying to trick [Ratliff] into sending you an inapplicable disclosure affidavit so you can send a notice of rescission."

¶7         In September 2006, Ratliff sued Hardison, seeking damages for breach of contract. In October, Hardison filed a counterclaim seeking a declaratory judgment that § 33-422 applied to the transaction, entitling him to the return of his $100,000 earnest money deposit. In December, Ratliff filed a motion for partial summary judgment on his breach of contract claim and in January 2007, Hardison filed a cross-motion for summary judgment on his counterclaim. Hardison now appeals the trial court's July 2007 order granting partial summary judgment in favor of Ratliff. In that order, the court found Hardison had repudiated the contract and concluded that § 33-422 did not apply to the transaction. The court entered judgment pursuant to Rule 54(b) and stayed its determination of damages pending this appeal.

**Discussion**

¶8         As stated above, we view the facts in the light most favorable to the party against whom summary judgment was entered. *See Andrews*, 205 Ariz. 236, ¶ 12, 69 P.3d at 11. Applying this standard, we agree with the trial court that no genuine issue of material fact exists as to whether Hardison had anticipatorily repudiated the contract. We also agree that no reasonable person could conclude Hardison had subsequently retracted his repudiation. In light of our conclusions, we need not determine whether the court correctly found that § 33-422 did not apply to this transaction. *See Univ. Mech. Contractors of Ariz., Inc. v. Puritans Ins. Co.*, 150 Ariz. 299, 301, 723 P.2d 648, 650 (1986) ("On appeal, we will sustain

4

the trial court's ruling on any theory supported by the evidence, even though the trial court's reasoning may differ from our own.").

a. **Anticipatory Repudiation**

¶9 A party anticipatorily repudiates a contract when he or she provides a "positive and unequivocal manifestation" that the party will not perform when his or her duty to perform arises. *Diamos v. Hirsch*, 91 Ariz. 304, 307, 372 P.2d 76, 78 (1962). Hardison argues "the facts available do not establish beyond any issue of fact that Hardison gave a 'clear and unequivocal' manifestation of intent to breach or repudiate the agreement." Rather, he maintains, he only attempted to modify the contract or warn that he might be unable to close escrow. *See Lombardo v. Albu*, 199 Ariz. 97, 99, 14 P.3d 288, 290 (2000) (buyer must inform seller of buyer's inability to perform); *United Cal. Bank v. Prudential Ins. Co.*, 140 Ariz. 238, 279, 681 P.2d 390, 431 (App. 1983) (good faith offer to perform on terms other than those in contract not anticipatory repudiation). That characterization, however, is not supported by the record and, indeed, is contradicted by Hardison's own explanation of his July 2006 actions, which the trial court considered in ruling on the competing motions for summary judgment.

¶10 Hardison testified at his deposition that before the closing, he had attempted to re-negotiate the contract, but Ratliff had "told [him] that he wasn't willing to negotiate." He further stated that, "kind of toward the end of July," he decided the "smartest thing [he] could do" would be to sacrifice the $100,000 earnest money and "[elect] to say [he] wouldn't buy it." Hardison further testified he had called Ratliff and "told him [he] had decided not

5

to purchase the farm." In his subsequent conversations with Ratliff, Hardison affirmed not once, but several times his ongoing intention not to perform. During the August 15 telephone call, Hardison said, "I'm not capable of closing," "[w]e're just not capable," "if my property had . . . sold, I would have [been able to perform]," and, "[w]ell Buddy, I can't perform. That's—that's it."

¶11 Hardison also acknowledged at his deposition that he had informed his banker, "around the closing date" and "in July," that he no longer intended to go forward with the contract. In an affidavit Hardison subsequently submitted in response to Ratliff's motion for summary judgment, he characterized his July 22 voicemail as merely expressing his "desire to negotiate a reduced purchase price for the Property"; but, he did not deny or explain his repudiation of the contract before the close of escrow. Similarly, in his reply brief on appeal, Hardison does not refute Ratliff's contention that he had repudiated the contract in late July. He only argues that he thereafter retracted his repudiation and that the affidavit requirement of § 33-422 provided him with an absolute right to rescind the transaction at any time. Finally, at oral argument before this court, Hardison's counsel maintained that Hardison had "misspoke[n]" when he admitted at his deposition that he had in July communicated to Ratliff and others that he would not buy the land. But the trial court could credit Hardison's direct testimony about his own actions and intent. *Cf. Wright v. Hills*, 161 Ariz. 583, 588, 780 P.2d 416, 421 (App. 1989) (parties cannot create issues of fact with affidavits that contradict their own depositions), *abrogated on other grounds by James Cooke & Hobson, Inc. v. Lake Havasu Plumbing & Fire Prot.*, 177 Ariz. 316, 868 P.2d 329 (App. 1993). Accordingly, we conclude

6

the undisputed facts, including Hardison's testimony, support the trial court's finding that Hardison clearly repudiated the contract as early as July 22, nine days before the closing date, and no reasonable factfinder could conclude differently.

**b.  Retraction of Repudiation**

¶12       Hardison contends that even if he repudiated the contract, he subsequently retracted his repudiation.  Hardison correctly notes that Arizona law allows for the retraction of an anticipatory repudiation.  *See Kammert Bros. Enters., Inc. v. Tanque Verde Plaza Co.*, 102 Ariz. 301, 306-07, 428 P.2d 678, 683-84 (1967).  However, he fails to develop his argument that, in this case, he did so.  Hardison merely asserts that his August 22 telephone conversation with Ratliff constituted a retraction because Hardison said he still wanted to purchase the land.  He then suggests that because following that call Ratliff continued to discuss the deal and urge performance, the retraction was effective.  This argument is unpersuasive and, as a matter of law, incorrect.  *See id.* at 306, 428 P.2d at 683 (non-breaching party may urge performance after repudiation and "should not be penalized for his [or her] efforts to make the other party live up to his [or her] end of the bargain"); *see also United Cal. Bank*, 140 Ariz. at 281, 681 P.2d at 433.

¶13       Hardison has not cited, nor have we found, any Arizona authority regarding the clarity and specificity required for a retraction of repudiation.  And the Restatement of Contracts does not define what is necessary for an act or statement to constitute "adequate" communication of a retraction.  *See* Restatement (Second) of Contracts § 256 cmt. b (1981) ("It is not necessary for the repudiator to use words in order to retract his statement.  Conduct,

such as an offer of performance, may be adequate to convey the idea of retraction to the injured party."). Ratliff cites a California decision holding that a retraction of a repudiation "must be clear and unequivocal." *Pichignau v. City of Paris*, 70 Cal. Rptr. 147, 149 (Cal. Ct. App. 1968). Other courts and authorities that have considered this issue have adopted this standard. *See Vahabzadeh v. Mooney*, 399 S.E.2d 803, 805 (Va. 1991); 92 C.J.S. *Vendor and Purchase* § 406 (2000) ("To be effective, a retraction of a repudiation of a land sale contract must be clear, definite, absolute, and unequivocal in evincing the repudiator's intention to honor his or her obligations under the contract.").[1] We find the reasoning of these courts instructive.

¶14        Retractions of repudiations must be clear and unequivocal in order for both the repudiator and injured party to be treated fairly in a dispute. *See Vahabzadeh*, 399 S.E.2d at 805 ("[L]ogic and reason compel the application of the same standard to the retraction of a repudiation that is applied in determining whether a contract has been repudiated."). Furthermore, although an ambiguous retraction may indicate the repudiator would like to continue with the transaction, it is ineffective to reinstate the initial contract. *See Freedman v. Rector, Wardens & Vestrymen*, 230 P.2d 629, 631 (Cal. 1951) (oral proposals to continue transaction on terms other than those of contract not a retraction). If a retraction that does not bind the repudiator to the same terms as the initial contract were given effect, it would deny

---

[1]We note this standard is also consistent with the law governing retraction of revocation in the sale of goods under the U.C.C. as adopted by Arizona. *See* A.R.S. § 47-2611(B) ("Retraction may be by any method which *clearly indicates* to the aggrieved party that the repudiating party intends to perform. . . .") (emphasis added).

8

finality to the injured party, who would be unable to further organize his or her affairs because he or she might be bound by contractual terms not yet in existence. *See Alderson v. Houston*, 96 P. 884, 889 (Cal. 1908) (retraction of repudiation invalid when it failed to commit to price or title, leaving injured party's future dealings at the whim of repudiator).

¶15        Additionally, allowing a less than clear and unequivocal statement to serve as a retraction of a repudiation could yield harsh results for both repudiators and injured parties. Anticipatory repudiators who express remorse for their prospective breaches could find themselves unwittingly re-bound to a contract under which they are incapable of performing and surprised by substantial damages from a party who did not act to mitigate losses. *Cf.* 23 *Samuel & Richard A. Lord, A Treatise on the Law of Contracts* § 63:53, at 656-57 (4th ed. 2002) (courts generally refuse to follow common law anticipatory repudiation doctrine that allows injured party to reject repudiation to enhance damages). Similarly, injured parties who understand an ambiguous retraction to be a mere expression of remorse could find themselves in breach when they make other arrangements to cover the repudiator's breach. *Cf.* Comment, *A Suggested Revision of the Contract Doctrine of Anticipatory Repudiation*, 64 YALE L.J. 85, 94 (1954) (criticizing contract doctrine whereby injured party who re-contracts to fulfill duty to mitigate, but does not affirmatively accept repudiation, could be left with two contracts if repudiator reinstates initial contract). A standard requiring clear and unequivocal retractions of repudiations both prevents these results and provides identical burdens of proof in breach and finality in dealings. *See Vahabzadeh*, 399 S.E.2d at 805; *Alderson*, 96 P. at 889.

¶16 Hardison failed to clearly and unequivocally retract his repudiation. During the August 9 telephone call, well after the contracted closing date, he stated he still wanted to buy the land, but he attempted to negotiate new terms for its purchase.[2] Hardison did not renounce his repudiation or articulate that he would like once again to be bound by the initial agreement. Rather, he affirmed that he wanted to obtain the land, but was unwilling to meet his obligation to pay for it. As a matter of law, this is not a positive and unequivocal statement of his desire to once again abide by the contract, nor is it a retraction at all. *See Kammert Bros. Enters*, 102 Ariz. at 307, 428 P.2d at 684 (seller's refusal to abide by original contract price constitutes a breach).

¶17 Nor did the August 30 letter retract the repudiation and reinstate the contract. In this letter, Hardison's attorney requested the affidavit of disclosure and stated that once he received it, Hardison would "advise of his intentions with respect to completing the transaction." He did not offer to perform under the contract, but rather assured Ratliff that if he provided a document giving Hardison an unconditional right to rescind the contract, he would advise him whether he still wished to perform. This was not a retraction because Hardison did not affirmatively renounce his repudiation and commit himself to the contract and meeting his obligations under it.

---

[2]Although the time for performance under the purchase agreement had passed and Hardison was in breach, because Ratliff was still willing to accept performance, we analyze this issue as one of retraction of Hardison's repudiation, as do the parties. *See United Cal. Bank*, 140 Ariz. at 281, 681 P.2d at 433 ("'[injured party's] continuing to urge performance may be properly held to keep . . . power of retraction alive.'"), *quoting* 4 *Corbin on Contracts* § 981 (1951).

## c. Effect of A.R.S. § 33-422

¶18      The trial court found § 33-422 inapplicable because it determined this transaction involved the sale of six parcels of land rather than five or fewer, the statute's threshold requirement. We may affirm a trial court's ruling if the court arrived at a correct result even if for different reasons. *See Univ. Mech. Contractors of Ariz., Inc.*, 150 Ariz. at 301, 723 P.2d 648 at 650. We need not decide whether § 33-422 applied to this transaction because we conclude, contrary to Hardison's assertions, that even if it were to apply,[3] Hardison's anticipatory breach extinguished any duty Ratliff would have had to Hardison under the statute. As we determined earlier, Hardison's repudiation of the purchase agreement took place before the seller's duty to provide disclosure may have arisen under the statute because the affidavit would not yet have been due when Hardison repudiated.

¶19      Section 33-422(D) provides that the purchaser "has the right to rescind the sales transaction for a period of five days after the affidavit of disclosure is furnished to the buyer." As we observed in section a. of our discussion above, Ratliff had not furnished the affidavit and Hardison repudiated the contract more than seven days in advance of the August 1 closing date and before the affidavit of disclosure would have been due; thus, his repudiation cut off any obligation Ratliff may have had to provide it.[4] *See United Cal. Bank*,

---

[3]Section 33-422, applies to sales of five or fewer parcels of land and the parties disagree about how many parcels were the subject of the sales contract as well as whether the statute applies exclusively to transactions for divided land.

[4]Furthermore, even if § 33-422 applied and the affidavit had been due when Hardison repudiated, we question whether the statutory right to rescind would necessarily arise when the affidavit is due. Section 33-422(D) provides that the purchaser of land in a transaction

140 Ariz. at 283, 681 P.2d at 435 ("A repudiating party is not entitled to demand performance from the innocent party. . . .").  Hardison could not seek to exercise any statutory right to rescind after he breached the contract.  *See Walker v. Estavillo*, 73 Ariz. 211, 214, 240 P.2d 173, 175 (1952) (purchasers in possession who defaulted on payments not allowed to rescind contract for seller's alleged failure to deliver marketable title).

## Disposition

**¶20**         The trial court's grant of partial summary judgment in favor of Ratliff is affirmed.

PHILIP G. ESPINOSA, Judge

CONCURRING:

PETER J. ECKERSTROM, Presiding Judge

GARYE L. VÁSQUEZ, Judge

---

covered by this statute "has the right to rescind the sales transaction for a period of five days *after the affidavit of disclosure is furnished to the buyer*." (Emphasis added).   Therefore, even if a § 33-422 affidavit had been required, Hardison had neither received nor requested it and thus, at least under the specific circumstances here, it is uncertain whether he would have necessarily acquired a right to rescind when he repudiated the contract.  *See Mejia v. Indus. Comm'n*, 202 Ariz. 31, ¶ 5, 39 P.3d 1135, 1137 (App. 2002) ("'[rights] are contingent, when they are only to come into existence on an event or condition which may not happen'"), *quoting Steinfeld v. Nielsen*, 15 Ariz. 424, 465, 139 P. 879, 895 (1913).