NOTICE: NOT FOR OFFICIAL PUBLICATION. UNDER ARIZONA RULE OF THE SUPREME COURT 111(C),
THIS DECISION IS NOT PRECEDENTIALAND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

PETRA ELISABETH SIMON,
*Petitioner/Appellee,*

*v.*

KENNETH ALLEN SIMON,
*Respondent/Appellant.*

No. 1 CA-CV 15-0496 FC
FILED 7-19-2016

Appeal from the Superior Court in Maricopa County
No.  FC 2014-050971
The Honorable Jennifer Ryan-Touhill, Judge

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Wilkins Law Firm, PLLC, Phoenix
By Amy M. Wilkins
*Counsel for Petitioner/Appellee*

The Garde Law Firm, PLLC, Anthem
By Kimberly J. Garde
*Counsel for Respondent/Appellant*

## MEMORANDUM DECISION

Presiding Judge Patricia A. Orozco delivered the decision of the Court, in which Judge Peter B. Swann and Judge Jon W. Thompson joined.

**O R O Z C O**, Judge:

¶1        Kenneth Allen Simon (Father) appeals from a decree of dissolution regarding legal decision-making authority, parenting time, child support, spousal maintenance, property allocation, and attorney fees. For the reasons stated below, we vacate the order that Father must pay his entire tax refund directly to the support payment clearinghouse in any year he is not current on his child support obligation.  In all other respects, we affirm the decree.

### FACTS AND PROCEDURAL HISTORY[1]

¶2        Petra Elisabeth Simon (Mother) and Father have two minor children and previously ran a successful residential contracting business until they separated in 2013.  In April 2014, the trial court entered temporary orders awarding Mother sole legal decision-making authority, $2,500 per month in spousal maintenance, and $763.30 per month in child support. The trial court ordered temporary therapeutic supervised parenting time for Father no less than once a week.  Father was later awarded unsupervised equal parenting time in August 2014.

¶3        After trial, the trial court found it was in the children's best interests to award Mother sole legal decision-making authority.  Father was awarded parenting time five of every fourteen days and equal vacation and holiday time.  The trial court found Mother no longer qualified for spousal maintenance and ordered Father pay $502.40 per month in child support. The trial court rejected Father's request to make the spousal maintenance order retroactive to the date of filing.  The trial court also rejected Father's claim that an Anthem residence was community property and awarded it to Mother as her separate property.  The parties were awarded the personal property in his or her possession, and the trial court rejected Father's claim that Mother dissipated or concealed any community assets.  The trial court

---

[1]      We accept the trial court's findings of fact unless clearly erroneous. *See McNutt v. McNutt*, 203 Ariz. 28, 30, ¶ 6 (App. 2002).

denied Father's request for attorney fees and Mother's request for an additional attorney fees award above the $8,718.50 for Father's noncompliance with discovery requests.

**¶4** The decree did not mention the community businesses known as the Simon Group and Distinctive Homes. Mother filed a motion to clarify the decree to award the businesses to Father, and Father opposed the motion. The trial court entered a post-decree order awarding the Simon Group and Distinctive Homes to Father along with all liabilities related to those entities.

**¶5** Father filed a timely notice of appeal from the decree. However, the notice of appeal was filed before the order awarding the businesses to Father was entered. Father did not file an amended notice of appeal challenging the post-decree order. We therefore lack jurisdiction to consider the post-decree order allocating the businesses. *See Navajo Nation v. MacDonald*, 180 Ariz. 539, 547 (App. 1994) (holding that we do not have jurisdiction over issues not included in the notice of appeal). We have jurisdiction over the issues raised in the timely notice of appeal pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes (A.R.S.) sections 12-120.21.A.1 and -2101.A (West 2016).[2]

## DISCUSSION

### I. Legal Decision-Making Authority and Parenting Time

**¶6** Father raises several issues relating to the award of sole legal decision-making authority and parenting time. We review the trial court's legal decision-making and parenting time orders for an abuse of discretion. *Owen v. Blackhawk*, 206 Ariz. 418, 420, ¶ 7 (App. 2003). In determining legal decision-making and parenting time, the trial court must consider the best interest factors listed in A.R.S. § 25-403.A. The trial court is required to make specific findings on the record as to all relevant factors and the reasons the decision is in the children's best interests. *See* A.R.S. § 25-403.B.

#### A. Mental and Physical Health of the Parties

**¶7** One factor the trial court must consider is the mental and physical health of all individuals involved. *See* A.R.S. § 25-403.A.5. The trial court found neither party presented any evidence regarding the parents' physical health. Father argues that the court erroneously excluded

---

[2] We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

a portion of Mother's medical records.  We affirm the trial court's exclusion or admission of evidence unless there is an abuse of discretion or legal error that results in prejudice.  *Yauch v. S. Pac. Transp. Co.*, 198 Ariz. 394, 399, ¶ 10 (App. 2000).

**¶8**        Father offered Mother's medical records as evidence that she worked full time during the marriage.  Father did not claim the records established any medical condition that would affect legal decision-making or parenting time, and he cannot raise this issue for the first time on appeal.  *See Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994).  Furthermore, Father does not point to anything in Mother's medical records that would have affected the best interest analysis.

**¶9**        Before trial, Father alleged Mother had mental health issues, and the court ordered both parties to submit to a psychological evaluation by Ronn Lavit, Ph.D.  Dr. Lavit reviewed Father's treatment records and performed psychological tests on Father but did not conduct an interview when Father failed to comply with payment orders.  The trial court found that mental health professionals previously diagnosed Father with depression, mood disorder, generalized anxiety disorder, and narcissistic and paranoid personality traits.  The trial court found Father failed to rebut this evidence because he did not complete the full psychological evaluation with Dr. Lavit.  The finding regarding Father's mental health is supported by the treatment records from 2012 to 2013.  The findings also correctly state that due to his failure to complete a full evaluation with Dr. Lavit, Father was unable to refute the mental health issues described in his earlier treatment records.  Father offered no evidence in rebuttal.  Thus, we find no clear error with the A.R.S. § 25-403.A.5 finding.

**¶10**        In addressing the mental and physical health of the parties, the trial court also found Father failed to "present any information demonstrating Mother is unable to provide appropriate care and control for [the children]."  Father argues this is not supported by the record because he introduced an inappropriate photo of the younger child appearing to drink alcohol that Mother posted on social media.  Although the photo is surely a discredit to Mother, it did not compel the conclusion Mother is incapable of caring for the children.  The trial court also received evidence that the children attended school regularly, and were well-cared for by Mother.  Appellate courts do not reweigh the conflicting evidence presented to the trial court.  *See In re Estate of Pouser*, 193 Ariz. 574, 579, ¶ 13 (1999).  We defer to the trial court's determination of the weight to give conflicting evidence.  *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998).

¶11 Father also argues the trial court erred in finding "Father's friend and business partner, Dennis Green, falsely portrayed himself as a doctor and claimed Dr. Lavit's forms 'are bogus.'" In an earlier proceeding, Father's attorney identified Mr. Green as a doctor and friend who was helping Father pay Dr. Lavit's fees. Mr. Green objected to the forms Dr. Lavit asked him to sign and, according to Dr. Lavit's report, Mr. Green stated he was a physician. Although the record does not indicate whether Mr. Green is actually a physician, it is immaterial. The trial court correctly focused on the fact that Mr. Green's objections delayed the payment of Dr. Lavit's fees which, ultimately, resulted in Father's failure to complete a full psychological evaluation. Father also argues the trial court improperly limited Mr. Green's testimony at trial. However, Father called Mr. Green to testify about investments in which Mother claimed an interest. Father never offered evidence that Mr. Green was a physician or asked Mr. Green about Dr. Lavit's fees. Thus, even if the trial court mistakenly found Mr. Green was not a physician, this fact was irrelevant to the best interests factors.

### B. Intentional Delay of Proceedings or Increased Cost of Litigation

¶12 Pursuant to A.R.S. § 25-403.A.7, the trial court shall consider "[w]hether one parent intentionally misled the court to cause an unnecessary delay, to increase the cost of litigation or to persuade the court to give a legal decision-making or a parenting time preference to that parent." The trial court found Father intentionally delayed the proceedings and increased the cost of litigation by failing to complete the psychological evaluation and provide disclosure, making meritless accusations about Mother's mental health, and unnecessarily involving the court-appointed advisor. Father contends the court misapplied this factor because it did not find he intentionally lied to the court. The trial court specifically found Father intentionally and needlessly caused delay and increased the cost of litigation. These findings are supported by the record and satisfy A.R.S. § 25-403.A.7. Therefore, the trial court properly applied this factor.

### C. Evidence of Domestic Violence

¶13 The trial court found Mother was the victim of domestic violence by Father, including verbal abuse, threats, stalking, and harassment. *See* A.R.S. §§ 25-403.A.8 and -403.03. Father argues this contradicts the finding that Mother was not a credible witness. Although the trial court questioned Mother's credibility regarding her health, the court expressly accepted Mother's testimony regarding the escalation of

Father's threatening behavior. The record contains evidence that Father removed a security camera from Mother's home and spied on Mother. Although the court-appointed advisor questioned some of Mother's allegations, the trial court was presented with conflicting evidence. We defer to the trial court's determination as to the weight to give the conflicting evidence. *See Gutierrez*, 193 Ariz. at 347, ¶ 13. Sufficient evidence supported the finding of domestic violence; therefore, we find no abuse of discretion.

### D.     **Evidence of Substance Abuse**

**¶14**        The trial court found no allegations that either party had substance abuse problems. Father argues this finding is erroneous because there was evidence at the temporary orders hearing that Mother consumed marijuana in late 2013 and evidence at trial that Mother drank alcohol. Father introduced photos Mother posted to social media showing her drinking on different occasions. He did not establish when these photos were taken or provide any information or allegations beyond the photos themselves. Evidence of the mere consumption of alcohol does not establish a substance abuse problem. Based on the photographs and the testimony from the temporary order hearing, we cannot conclude the trial court abused its discretion in finding no evidence of substance abuse in the twelve months before the petition was filed, as required by A.R.S. § 25-403.04.A.

**¶15**        Father argues the trial court erred by not allowing his adult daughter to appear telephonically at trial. Father's motion cited the fact that his daughter lived in California and travel would be burdensome. The trial court denied the motion, finding no good cause. "The trial court has great discretion in controlling the conduct of a trial." *Rutledge v. Ariz. Bd. of Regents*, 147 Ariz. 534, 543 (App. 1985) (citation omitted). Father claims his daughter would have testified as she did at the temporary orders hearing to Mother's use of marijuana, parenting skills, and boyfriend. Father could have offered the transcript of the witness's earlier testimony but failed to do so. Moreover, despite hearing this evidence at the temporary orders hearing, the trial court awarded Mother temporary sole legal decision-making authority. Thus, the proffered evidence was cumulative and its exclusion at the trial was not prejudicial to Father. "To justify the reversal of a case, there must not only be error, but the error must have been prejudicial to the substantial rights of the party." *Creach v. Angulo*, 186 Ariz. 548, 550 (App. 1996).

¶16 The trial court considered all relevant factors in A.R.S. §§ 25-403, -403.01, -403.03, and -403.04 and made appropriate findings of fact. There was substantial evidence of the high level of conflict between the parties, Father's threatening behavior, and Father's failure to provide the children with appropriate medicine and school clothing. Although Mother inappropriately involved the older child in conversations about the divorce, the trial court is the fact finder. The trial court did not abuse its discretion in concluding that it was in the children's best interests to award sole legal decision-making authority to Mother.

### E. Parenting Time Orders

¶17 Father argues the parenting time award was also an abuse of discretion because the trial court did not make findings as to each factor in A.R.S. § 25-403.A. As discussed above, the trial court made sufficient findings of fact that were supported by the record. We find no abuse of discretion.

### F. Exchange Location

¶18 The trial court ordered the parties to exchange the children at Valley Child Care preschool when it was not possible to exchange at the children's school. The parties have used Valley Child Care for exchanges in the past, and the parent dropping off the children pays a $37 fee per child. Although this is a costly alternative, the court-appointed advisor testified that the parties were unable to exchange the children in person due to the high conflict and history of emotional abuse by Father. In light of the parties' inability to peacefully exchange the children, the trial court did not abuse its discretion by ordering use of Valley Child Care when the exchanges could not be made at school.

### G. Paternity of Mother's Newborn Child

¶19 Mother had a child shortly before trial; Bret Holly, her boyfriend, is the father of this child. At trial, Father expressly denied he was the biological father of this child. Therefore, the paternity issue was not before the trial court, and the lack of any paternity ruling was not error.

## II. Spousal Maintenance and Child Support Awards

### A. Retroactive Modification of Support Orders

¶20 The temporary orders awarded Mother $2,500 per month for spousal maintenance and $763.30 per month for child support. After the

trial, the court, however, determined that Mother was capable of earning $6,000 a month, and, thus, not entitled to spousal maintenance. As a result, Father's child support obligation was reduced to $502.40 a month. Father argues the trial court erred in denying his request to retroactively modify the temporary orders to reflect these final support awards. "We review the court's decision to modify the amount of support for an abuse of discretion." *Maximov v. Maximov*, 220 Ariz. 299, 300, ¶ 2 (App. 2009).

¶21 The trial court has authority to set the effective date of a modification of temporary support orders to an earlier date. *See id.* at 301, ¶ 7. The judge issuing the temporary orders noted those orders were subject to reallocation at the time of trial. However, at trial, a different judge declined Father's request to retroactively modify the spousal maintenance, stating that would constitute a "collateral appeal." This statement was error. The trial court has discretion to modify the temporary orders to reflect the final orders pursuant to A.R.S. § 25-317.F. Thus, any modification is not a "collateral appeal."

¶22 Despite the erroneous basis the trial court expressed for its ruling, we conclude there was an independent basis for the court to deny Father's request to retroactively modify the temporary support orders. *See Univ. Mech. Contractors of Ariz., Inc. v. Puritan Ins. Co.*, 150 Ariz. 299, 301 (1986) ("On appeal, we will sustain the trial court's ruling on any theory supported by the evidence, even though the trial court's reasoning may differ from our own."). The temporary orders were based on Father's $6,000 monthly income and Mother's income apart from spousal maintenance. After trial, the court found Mother was capable of earning $6,000 a month and was therefore not entitled to spousal maintenance. At the time of the temporary orders, however, the parties' younger child was not yet in school and attended preschool only part-time. Therefore, Mother qualified for spousal maintenance as the custodian of a child whose age is such that she should not be required to work outside the home. *See* A.R.S. § 25-319.A.2. Accordingly, we affirm the decision not to retroactively modify the temporary support orders.

### B.    Order Regarding Father's Tax Refunds

¶23 The decree ordered Father to pay his entire tax refund directly to the support payment clearinghouse for any year in which he was not current on his child support or arrearage obligations. Father argues this exceeded the trial court's statutory authority. We agree. Although the trial court has authority to enforce its support orders, *see* A.R.S. § 25-508.A, it must do so in a manner provided for by law. According to § 25-508.A,

courts may enforce support orders by "lien, execution, attachment, garnishment, levy, appointment of a receiver, provisional remedies or any other form of relief provided by law." Under A.R.S. § 25-505, a trial court can order withholding lump sum payments, but tax refunds are not included in the definition of lump sum payments. *See* A.R.S. § 25-505.A, E. The statutes relating to enforcement of support obligations provide specific procedures for collecting child support arrears. *See, e.g.*, A.R.S. § 25-504 (setting forth the procedure to establish and enforce an order of assignment); § 25-505.01 (setting forth the procedure to establish withholding orders); § 42-1122.A, T.3-4 (authorizing a liability setoff program under which a state tax refund may be used to satisfy delinquent court-ordered child support payments owed by a taxpayer). However, the decree required Father *automatically pay his entire tax refund* regardless of the arrearage amount. There being no statutory authority for such a requirement, we vacate the order requiring Father to pay his entire tax refund to the support payment clearinghouse if he is not current on any child support obligation. Mother may file a petition to enforce the support obligation pursuant to the applicable statutes.

## III.    Property Allocation[3]

### A.    Anthem Residence

¶24         The trial court awarded the Anthem residence to Mother as her separate property, rejecting Father's claim that he was coerced into signing a disclaimer deed. Father argues the trial court erred in finding he signed an enforceable disclaimer deed. Alternatively, Father claims the trial court erred by failing to award him a community lien on the Anthem residence or an equalization payment for the community funds used to improve, repair, and pay the mortgage on the Anthem residence during the marriage.

¶25         Father testified that he signed the disclaimer deed only because Mother told him the lender did not want his name on the title due to his prior bankruptcy and he did not know what he was signing. Father claimed the funds to purchase the Anthem residence came from community property. However, Mother testified that she purchased the Anthem residence with funds from the sale of a home she owned in Wyoming. Therefore, she contends the Anthem residence was her separate property.

---

[3]      As noted above, the allocation of the community businesses is not properly before this court on appeal. *See supra* ¶ 5.

¶26 Although the evidence was disputed, the record supports the finding that the disclaimer deed was valid. The existence of the disclaimer deed along with the evidence that Mother's separate property funds were used to purchase the Anthem residence rebuts the presumption that the residence was community property because it was purchased during the marriage. *See Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 524, ¶¶ 6-7 (App. 2007).

¶27 Generally, "[a]ny community funds used to pay the mortgage or enhance the value of the [separate property] house entitle the community to a share of any equity attributable to those efforts." *Id.,* at 114, ¶ 12 (citations omitted); *see also Valento v. Valento*, 225 Ariz. 477, 481, ¶ 12 (App. 2010). However, Father failed to offer any evidence as to the amount of community funds expended on the mortgage or to enhance the value of the Anthem residence.[4] Therefore, the trial court did not abuse its discretion in rejecting his claim for a community lien.

## B. Personal Property Allocation

¶28 Father argues the allocation of personal property was an abuse of discretion. The parties disputed the extent of the personal property Father received from the marital residence and the storage unit. The trial court found neither party established that any additional personal property should be transferred. We review the distribution of property for an abuse of discretion. *Bell-Kilbourn*, 216 Ariz. at 523, ¶ 4. Based on the conflicting evidence regarding the property in each party's possession, we find no abuse of discretion. *See Gutierrez*, 193 Ariz. at 343, ¶ 13.

## C. Father's Claim for Marital Waste

¶29 In his pretrial statement, Father claimed "Mother spent approximately $100,000 in furtherance of her eight extramarital affairs." On appeal, Father contends the trial court failed to address his claim that he

---

[4] The record indicates that between the purchase of the residence in July 2007 and the date of filing in January 2014, the mortgage debt increased as a result of the parties failing to pay the mortgage between 2011 and 2013, and the value of the home decreased. Although Mother's Exhibit 45 showed some payments were made on the mortgage titled in her name, the overall mortgage debt increased, and Father failed to establish the total amount of community property used to make any of these mortgage payments. Father also failed to offer any evidence that community funds were used to enhance the value of the residence.

was entitled to reimbursement for $2.5 million in withdrawals Mother made in 2012 and 2013. At trial, Father claimed not to know where the $2.5 million came from or how it was spent. Father admitted that Mother paid all the businesses' contractors during the marriage, the parties paid cash for an Infiniti and Jaguar, and they made a $1,000 down payment on a truck. Father did not dispute all the expenditures Mother made and failed to identify which specific expenditures were excessive or unauthorized.

¶30 The trial court correctly found "Father failed to provide discovery supporting his claims of marital waste or concealment of property[.]" Because Father did not explain which transactions he contended were waste, we affirm the trial court's finding that Father failed to meet his burden of proving marital waste.[5]

## IV. Attorney Fee Award

¶31 Before trial, the court awarded attorney fees to Mother as a sanction for Father's failure to obey discovery orders. The decision to award attorney fees as a sanction for discovery violations is left to the sound discretion of the trial court, and we will not disturb that decision absent a clear abuse of discretion. *Roberts v. City of Phoenix*, 225 Ariz. 112, 121–22, ¶ 34 (App. 2010); *see also* Ariz. R. Fam. L.P. 65.B.2 (authorizing the court to order the party failing to obey court-ordered discovery to pay reasonable attorney fees). On appeal, Father contends Mother's fee affidavit did not comply with *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183 (App. 1983), because it included charges for several subpoenas that were quashed.[6]

---

[5] Father cited several bank statements which he claimed proved Mother's marital waste. With the exception of Exhibits 156 and 159, none of the bank statements Father cited were admitted into evidence.

[6] Father's opening brief incorporated other objections to the fee affidavit "for the reasons set forth [in] his Response to Mother's Affidavit[.]" His brief did not specify what those objections were. Although incorporating arguments by reference is not forbidden in civil cases as it is in criminal matters, *see* Ariz. R. Crim. P. 32.9.c.1(iv), the failure to develop an argument on appeal or cite legal authority in support of an argument constitutes waiver. *See* ARCAP 13(a)(7); *Bennett v. Baxter Group, Inc.*, 223 Ariz. 414, 418, ¶ 11 (App. 2010) (holding that a party waived a claim that was "wholly without supporting argument or citation to authority.") (citation omitted). Accordingly, we find Father waived these other objections by not providing specific arguments or citations to authority on appeal.

However, Father did not raise this objection below. We will not address arguments made for the first time on appeal. *See Paloma Inv. Ltd. P'ship v. Jenkins*, 194 Ariz. 133, 137, ¶ 17 (App. 1998).

**¶32** Related to this fee award, Father argues the trial court did not rule within sixty days on his motion for leave to file a sur-reply to Mother's reply in support of her fee affidavit. The trial court granted Mother's fee request and did not rule on Father's request, resulting in its denial by operation of law. *See Atchison, Topeka & Santa Fe Ry. Co. v. Parr*, 96 Ariz. 13, 15 (1964) (finding that motions not ruled upon by the trial court are denied by operation of law). In any event, the sixty-day time limit imposed pursuant to Article 6, Section 21, of the Arizona Constitution, is "directive and not mandatory," and a trial court's failure to abide by it does not render the decision void. *Shockey v. Indus. Comm'n of Ariz.*, 140 Ariz. 113, 116-17 (App. 1983).

**¶33** Father also argues he was entitled to an award of attorney fees at trial pursuant to A.R.S. § 25-324 because Mother's conduct throughout the litigation was unreasonable. We will uphold an award of attorney fees made pursuant to A.R.S. § 25-324 absent an abuse of discretion. *Mangan v. Mangan*, 227 Ariz. 346, 352, ¶ 26 (App. 2011). The trial court found both parties were not credible as to different matters. Additionally, the trial court found "both parties provided inaccurate, misleading, or blank information on their Affidavits of Financial Information, leaving this Court with limited information on the parties' true finances." The record supports the finding that both parties acted unreasonably; therefore, the trial court did not abuse its discretion by denying Father's request for attorney fees.

## V.     Attorney Fees and Costs on Appeal

**¶34** Both parties request an award of attorney fees on appeal, and Mother requests costs. Father's claim is based on A.R.S. § 25-324, but Mother does not cite any statutory authority for her request. There is no information in the record indicating the parties' financial circumstances have changed since the decree, and the parties did not engage in unreasonable conduct on appeal. Therefore, each party shall pay his or her own attorney fees and costs on appeal.

## CONCLUSION

**¶35** We vacate the order that Father must pay his entire tax refund

directly to the support payment clearinghouse every year he is not current in his court-ordered child support obligations. In all other respects, we affirm the decree.



Ruth A. Willingham · Clerk of the Court
FILED: AA